## SCHULDER v. DICKSON et al.

No. 4168.   Decided January 18, 1926.   (243 P. 377.)

1. APPEAL AND ERROR—PROVINCE OF REVIEWING TRIBUNAL ON APPEAL IN EQUITY PROCEEDINGS, STATED.  Reviewing tribunal is required in equity proceedings to review record and determine whether court's findings are supported by weight of evidence, and, if supported, whether conclusions of law are supported by findings.

2. ATTORNEY AND CLIENT—FINDING THAT PARTNERS ON DISSOLUTION OF LAW PARTNERSHIP AGREED TO WIND UP BUSINESS AND DIVIDE FEES IN ACCORDANCE WITH PARTNERSHIP AGREEMENT, SUSTAINED.  Evidence *held* to sustain finding that on dissolution of law partnership, partners agreed to wind up and complete pending and unfinished business belonging to firm, and to divide fees received in such winding up in accordance with their interests as disclosed by partnership agreement.

3. ATTORNEY AND CLIENT—PLAINTIFF HELD NOT ENTITLED TO SHARE IN FEES RECEIVED BY PARTNERSHIP IN OBTAINING REVERSAL OF JUDGMENT OF CIRCUIT COURT OF APPEALS IN UNITED STATES SUPREME COURT.  Under agreement for dissolution of law partnership and division of fees as to "pending business," plaintiff *held* not entitled to share in fees received by defendants in obtaining reversal of judgment of Circuit Court of Appeals in United States Supreme Court, where services rendered in Supreme Court were under a new employment and not a part of original employment of partnership.[1]

4. ATTORNEY AND CLIENT—STATEMENT OF RETIRING MEMBER OF LAW PARTNERSHIP THAT PLAINTIFF WOULD RECEIVE PART OF FEES IN

---

[1] *Sandall* v. *Sandall*, 193 P. 1093, 57 Utah, 150.

Corpus Juris-Cyc. References.

[1]   Appeal and Error, 4 C. J. pp. 659 n. 59; 897 n. 81.

[2]   Attorney and Client, 6 C. J. pp. 628 n. 19; 672 n. 60; 673 n. 61.

[3]   Attorney and Client, 6 C. J. p. 629 n. 29 New.

[4]   Attorney and Client, 6 C. J. p. 628 n. 14 New.

[5]   Attorney and Client, 6 C. J. pp. 629 n. 29 New; 676 n. 24; 677 n. 25: Partnership, 30 Cyc. p. 438 n. 79.

LITIGATION THEN PENDING HELD NOT BINDING ON OTHER MEMBERS. Statement of retiring member of law partnership that plaintiff would receive a part of fees in case then pending if retiring member argued it, which statement was without consideration, *held* not binding on other members of partnership.

5. ATTORNEY AND CLIENT—PLAINTIFF ENTITLED TO PRO RATA SHARE OF FEES RECEIVED BY DEFENDANTS AFTER DISSOLUTION OF LAW PARTNERSHIP FOR SERVICES RENDERED BY THEM DURING EXISTENCE OF PARTNERSHIP. Under agreement for dissolution of law partnership and division of fees as to pending business, plaintiff was entitled to his pro rata share of fees received by defendants after dissolution of partnership for services in obtaining reversal of judgment of Circuit Court of Appeals in United States Supreme Court for whatever part of such services were rendered by defendants during existence of partnership.

CHERRY and THURMAN, JJ., dissenting.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Suit by Russell G. Schulder against William H. Dickson and another, in which executor was substituted for named defendant on his death. Judgment for plaintiff, and defendants appeal.

AFFIRMED in part, and reversed in part and remanded, with directions.

*Dey, Hoppaugh & Mark,* of Salt Lake City, for appellants.

*M. E. Wilson,* of Salt Lake City, for respondent.

GIDEON, C. J.

This case was first argued in this court at the 1924 October term. An opinion was thereafter rendered. A petition for rehearing was filed. The members of the court concurring in the opinion, after further consideration of the case and of the arguments in the petition for rehearing, concluded that the law applicable to the facts appearing in the record did not

support or justify the conclusions reached in the original opinion; nor does the record support in its entirety the statement of facts made in that opinion. A rehearing was therefore granted, and the cause was again orally argued at the February term, 1925. Since the date of the reargument and resubmission, we have again gone over the record and carefully considered the same. We are now firmly convinced that the court's former opinion should not stand as the judgment in the case. It will for that reason not be published, and this opinion instead will be filed and published officially.

This is an action for an accounting instituted by respondent, plaintiff below. An accounting is sought of the affairs of the partnership theretofore existing between respondent and appellants, William H. Dickson and Adrian C. Ellis, Jr., defendants below. Subsequent to the taking of testimony and prior to the entry of judgment, Dickson died. The executor of his estate was thereafter substituted as defendant. The trial court rendered judgment in favor of respondent. Motion for new trial was denied. The case is here on appeal taken jointly by Ellis personally and by Ellis as executor of Dickson's estate.

The proceeding is one in equity. The assignments assail practically each and all of the trial court's findings. We are asked, and it is our duty, to review the record and determine whether the court's findings are supported by the weight of evidence and, if supported, whether the conclusions of law are supported by the findings.

The following facts appear in the record: In the year 1895, William H. Dickson, Adrian C. Ellis, Sr., and Adrian C. Ellis, Jr., formed a partnership for the general practice of law in Salt Lake City, Utah, under the firm name of Dickson, Ellis & Ellis. Judge Dickson and Ellis, Sr., were then lawyers of many years experience. In 1903 respondent married Judge Dickson's daughter. Upon the request of Judge Dickson, respondent was admitted as a member of the partnership. The firm was thereafter known and styled Dickson, Ellis, Ellis & Schulder. That partnership continued until 1912. In that year Ellis, Sr., passed

away.   The surviving members thereupon organized a new firm under the name of Dickson, Ellis & Schulder.   In their new firm the division of fees was three-eighths to Dickson, three-eighths to Ellis, Jr., and two-eighths to Schulder.   This action is to recover respondent's pro rata share under this partnership agreement of certain fees claimed to have been received by appellants.   The fees in controversy were for services rendered in litigation claimed by respondent to have been pending business at the date of the dissolution of the partnership.

The firm of Dickson, Ellis & Schulder continued until July 1, 1916.   Upon that date Judge Dickson retired, and at the date of his retirement announced to the other members of the firm that he expected to receive his pro rata share of the retainers of the firm until January 1, 1917, and also that he would expect to receive his pro rata share of all amounts received from business or litigation then pending in which the firm was interested whenever such business or litigation was finally terminated.   Neither respondent nor Ellis desired Judge Dickson to withdraw from the firm, but, at the latter's request, acquiesced in such arrangement.   It was evidently contemplated at that time that Schulder and Ellis would continue in the practice of law at the same offices then occupied by the firm and would devote such efforts and time as were required to wind up the business of the old firm.   In November, 1916, a partnership agreement was made between Ellis and Schulder, by the terms of which they engaged in the practice of law under the firm name of Ellis & Schulder. That partnership arrangement continued till June 9, 1917. At that time Ellis advised Schulder that he would not continue the relationship and advised him that he (Ellis) would move away from the offices occupied by the firm and let Schulder retain them, or that he would retain the offices and Schulder could remove therefrom.   Schulder demurred to the termination of the partnership, but was advised by Ellis that the partnership relation would cease.   Ellis also advised Schulder at that time that he (Schulder) would receive his pro rata share of the retainers until July 1st; that Schulder

was at liberty to take as much of the business of the firm as he could take, including retainers, and that he (Ellis) would do likewise; that there would be no division of fees after July 1st. The retired member of the old firm, Judge Dickson, was not a party to this new agreement between Ellis and Schulder, and he stated in his testimony that he did not know of the arrangement for some years afterwards.

At the beginning of the trial in the district court, there was introduced in evidence a statement of the cases pending at the time of the withdrawal of Judge Dickson from the firm. This statement is known as "Plaintiff's Exhibit 1." It contains 12 items and gives amounts and dates of payments as well as the division made of such payments. All of the amount in controversy were fees received by appellants subsequent to the date of the termination of the partnership of Ellis & Schulder. The services for which these fees were received, with possibly one or two exceptions, were rendered after Ellis and Schulder had ceased to be partners. The district court took the view that respondent was entitled to such share of those fees as he would have been entitled to had the partnership continued. In other words, that he should receive his one-fourth notwithstanding the dates when collections were made and notwithstanding respondent rendered no services in the litigation after July 1, 1917, out of which those fees were received. It should be stated that respondent Schulder, after the termination of the partnership of Ellis & Schulder, stated to Mr. Ellis that he would be glad to devote any time and render any services necessary in concluding the old partnership business. He was not, however, requested to, nor did he, render any services in the cases pending except in one or two. In these cases he was requested so to do by the clients. Respondent had received prior to the institution of this action his pro rata share under the partnership agreement of approximately $27,500 fees received by appellants for business pending in the office at the time of the withdrawal of the senior member, Dickson.

The trial court, among other things, found the fact of the organization of the partnership in 1912 between respondent

and appellants for the practice of law in Salt Lake City, and also found the agreed division of fees by each party; that the partnership continued from the date of its organization till July 1, 1916; and that during all of that time the said partnership carried on and conducted a general practice of law as a firm with offices at Salt Lake City and divided the net returns of the business according to the agreement of partnership. In its fourth finding the court found that on July 1, 1916, Judge Dickson, one of the firm, requested the dissolution of the firm and that the firm was thereupon dissolved "upon an agreement then made between said Schulder, the said Ellis and the said Dickson; that said agreement was in substance to the effect that all pending and unfinished business belonging to the firm should be wound up and completed by said three parties, and that the fees and moneys received as such for services rendered by said parties in the finishing and completion of said business should be divided in accordance with the then existing partnership agreement, namely, three-eighths to said Dickson, three-eighths to said Ellis, and two-eighths to the plaintiff, herein, and that all of the then members of the firm agreed and recognized that the then pending business should be divided upon such basis." That finding of the court, in our judgment, is supported by practically the uncontradicted evidence in the case, not so much from what was said at the time of the dissolution as from the conduct and acts of the parties following the dissolution. It appears without dispute that for a year after the dissolution the members of the partnership occupied the same offices occupied by them prior to the dissolution; that they devoted their time and attention to the winding up of all of the pending business and divided all fees received in conformity with the partnership agreement. Furthermore, after the dissolution of the firm of Ellis & Schulder in July, 1917, the fees collected for services rendered in connection with the pending unfinished business were so divided.

The court's finding (and, as indicated, that finding is supported by the record) is that the agreement related to the then "pending business." It is therefore necessary to in-

quire and determine just what was intended by "pending business." Pending business was of necessity limited to the partnership employment then actually in force. In other words, the termination of the employment of the partnership then existing respecting any business or litigation did necessarily end the partnership's relation to such business. The partnership had ceased to exist except in so far as it related to the pending business. If the services for which the partnership was employed terminated, then, of necessity, it would seem, the business was no longer "pending" so far as the partnership was concerned.

As has been pointed out, at the beginning of the trial an agreed statement was introduced in evidence known as Plaintiff's Exhibit 1, which contained all of the items in dispute, 12 in number, and for which respondent seeks to recover part of the fees received. The court found that each of those items was pending business at the date of the dissolution in July, 1916, and that any work or service rendered in each or all of those actions subsequent to the dissolution was for and in the interest of the partnership and upon pending or unfinished business, and determined as a matter of law that respondent was entitled to his pro rata share of the fees received for such services. The findings of the court on 11 of the 12 items included in the statement are sufficiently supported by the record to preclude us from disturbing such findings. The remaining item or amount in controversy, known as item No. 5 and designated "Silver King-Conkling" Case, presents a more serious question.

There is no testimony in the record tending to show what arrangements or agreements were made between the partnership and its clients respecting any of the litigation involved in the items shown on Plaintiff's Exhibit 1. It only appears that the partnership was acting as attorneys for those several litigants under an employment the terms of which are not shown in the record. The history of the "Silver King-Conkling" Case, in which the partnership represented the Silver King Coalition Mining Company, is that the litigation in that case extended over a period of years and it was by the court

so found. The case had been pending in the courts since the year 1909. The action was for an accounting for the value of ore alleged to have been taken by the Silver King Coalition Mining Company from grounds belonging to the complainant in that action. The case was tried in the federal District Court of Utah in the year 1912 and resulted in a judgment in favor of the mining company. An appeal from that judgment was taken to the Circuit Court of Appeals (230 F. 553), and there the judgment was reversed and the cause remanded, with directions to take an accounting between the parties. Some effort was made to obtain a review by the Supreme Court of the United States of this decision of the Circuit Court. That effort failed. The cause was remanded to the federal District Court of Utah, and an accounting was had in or about the month of June, 1917, and a judgment for a large sum was rendered against the mining company. The cause was again taken to the Circuit Court of Appeals, where the judgment of the federal District Court of Utah was affirmed and an additional amount added to the judgment of the District Court. This second judgment of the Circuit Court of Appeals was rendered in the year 1919. 255 F. 740, 167 C. C. A. 86. All the services connected with the accounting, the appeal to the Circuit Court, and the hearing in that court were performed and rendered by appellant Dickson or appellant Ellis, or by both jointly. At that stage of the litigation the officers of the Silver King Coalition Mining Company were desirous of compromising the judgment, settling the controversy, and stopping further expense in litigation. For that purpose they requested Messrs. Dickson and Ellis, as well as other and additional counsel employed by them in the case, to render statements for all services rendered to date. These statements were rendered and the amount thereof was paid in full. Respondent received his pro rata share of the fee paid to appellants at that time. The effort to compromise the judgment affirmed by the Circuit Court failed, and the appellants, with the other attorneys in the case, were instructed by the officers of the Silver King Coalition Mining Company to make an effort to have

the case reviewed by the Supreme Court of the United States. That effort was made and it was successful, and ultimately, in the year 1921, resulted in the reversal of the judgment of the Circuit Court and the affirmance of the judgment of the federal District Court of Utah rendered in 1912. 41 S. Ct. 310, 426, 255 U. S. 151, 65 L. Ed. 561. The item in controversy here is the amount claimed to have been received by appellants for services rendered in obtaining the review of the judgment of the Circuit Court of Appeals and final reversal of the same.

It is earnestly contended on behalf of appellants that the employment existing at the time of the dissolution of the partnership in this litigation terminated at the time of the affirmance of the judgment on the second appeal by the Circuit Court of Appeals; that the subsequent services rendered by appellants were under a new employment, and consequently that part of their work was upon business not pending at the date of the dissolution of the partnership. As indicated, the record is silent as to the agreement of employment at the time the firm undertook the defense of the action. The testimony of respondent is to the effect that this business came into the office about the year 1909. The most that can be said is that the employment was to defend the action brought against the firm's client without limitation as to duration or suggestion as to when the employment might cease. In its eleventh finding, respecting the work and services rendered in the Supreme Court of the United States in procuring the writ of certiorari, the court found that—

"This work in the United States Supreme Court, and the work incident thereto, was a continuation of the work of the firm of Dickson, Ellis & Schulder; that the work done in the United States Supreme Court was not done pursuant to any new employment but was done in carrying out and performing the obligations of the original employment; that the result of all the work theretofore done was marshaled and used in performing the services rendered in the United States Supreme Court."

Does the evidence support the above finding, namely, that the work done, etc., was pursuant to and a part of the original employment?

It quite conclusively appears from the testimony of Mr. W. W. Armstrong and that of Mr. W. Mont Ferry, president and vice president, respectively, of the mining company, at the date of the affirmance of the judgment by the Circuit Court, that Schulder was not employed by that company to represent it in this litigation. Mr. Armstrong testified, quoting from the abstract:

"Mr. Schulder was not employed in any way by the Silver King company while I was director, on the executive committee, or president, to my knowledge."

The same witness further testified, again quoting from the abstract:

"To the best of my knowledge, no steps were taken to apply for the writ of certiorari until after the proposed settlement fell through. There were certain arrangements made with Mr. Ellis as chief counsel, if I am not mistaken, in the matter of arranging to apply for a writ of certiorari, to employ associate counsel, and Mr. Marioneaux and a man whose name I cannot recall, I think it was Judge Lindley, but I know we wished Mr. Ellis to be chief counsel and I can distinctly recall Mr. Marioneaux. We wished Mr. Ellis for chief counsel in all company matters."

This witness, however, testified on cross-examination (further quoting from the abstract) as follows:

"At the present time I have no official connection with the company. During all the time that I was a director I think Mr. Ellis was acting as attorney for the company. I was a director until after the decease of Thomas Kearns. From the time I was elected president I made arrangements with Mr. McCormick that we should cut down our legal expenses and confine it as far as possible to one firm. I understood that firm had been attorneys for the company for a great many years. I didn't understand that we were getting any new attorneys in confining our attention to this one firm. I would say we just continued relationship with that firm and cut off some other legal expenses. I have been intimately connected with and known the Silver King Coalition Mines Company ever since I went to Park City in 1889. I know that the firm of Dickson, Ellis, Ellis & Schulder were attorneys for that company from the time it was organized and to the best of my knowledge and belief continue such to this day. I had nothing to do with the payment of the final fee in the Silver King-Conkling case. I had nothing to do with the settlement made by the company, after the final decision of the Supreme Court, with Mr. Ellis or Mr. Dickson. I know nothing about that."

Mr. Ferry testified, again quoting from the abstract:

"The committee of which I was a member did attempt to negotiate with the representatives of the Conkling Mining Company for a settlement which failed. I had nothing to do with the first negotiations for a settlement. I refer to the second. There had been prior negotiations during the incumbency of Mr. Armstrong as president. I had nothing to do with those. As a member of the executive committee and as a director some action was taken at the instance of the president of the company looking to the employment of attorneys for application to the United States Supreme Court for a writ of certiorari, the second. Those attorneys were Dickson, Ellis & Lucas and subsequently Mr. Marioneaux. No others were employed at that time. I think there is a minute on the records which shows that happened the latter part of 1918. Mr. Schulder was not employed by the company."

There is no claim that respondent ever rendered any assistance in the services performed by appellants in the application for review to the Supreme Court of the United States or in the argument of the case before that court. If therefore the respondent is entitled to share in the fee received for such services, it must be, and can only be, by reason of his former relationship with the appellants as a member of the firm of Dickson, Ellis & Schulder. Resort must therefore be had to the rules of law governing the employment of attorneys and the extent of that employment under the facts found by the court and as enumerated herein in order to determine whether the service rendered for the fee in controversy was for business pending at the date of the dissolution of the firm.

In *Berthold* v. *Fox*, 21 Minn. at page 53, the court says:

"At common law, the authority of an attorney to represent his client in an action ceased upon the entry of judgment; but for a year and a day thereafter he had authority to act for his client in enforcing the judgment by execution, etc. * * * But neither the common law nor any statute continues after judgment the authority of the attorney for the defeated party, the judgment debtor, or the defendant in the judgment, as he is aptly styled. * * * But after judgment, unless the defendant, by appeal or otherwise, seeks a reversal or modification thereof, or a stay of proceedings thereon, no reason is apparent why he should be represented by attorney, or why the authority of his attorney in the action should be presumed to continue. All that remains to be

done in the action is the enforcing of the judgment. * * * But assuming that the retainer of the plaintiff's attorney continues indefinitely until the fruits of the judgment are realized by his client, there is no reason for presuming that the defeated party continues the employment of an attorney, for whose services he can expect to have no use, there being nothing left to be done on his part but to satisfy the judgment, or show upon a supplementary examination his inability to do so. Of course, where the defendant's former attorney, or any other, takes any proceeding in his behalf, the attorney's authority is presumed, as well after judgment as before. And the defendant may employ a new attorney to prosecute a writ of error, without a formal substitution or notice."

In *Hooker* v. *Village of Brandon,* 75 Wis. 17, 43 N. W. at page 744, the court says:

"We think, upon authority and principle, an employment to defend an action pending in a trial court does not, under ordinary circumstances, authorize such attorney to take an appeal to a higher court from the judgment rendered against his client. Public policy and the rights of litigants require that their attorneys in such case, especially where they have easy access to their clients, should first consult their wishes upon the question of taking an appeal from the judgment rendered against them in the trial court before incurring further expenses in such litigation. Any other rule would authorize an over-confident attorney to inflict unnecessary costs upon his client in a case when the client was entirely satisfied to abide the judgment of the trial court." Citing cases.

The first headnote to *Tobler* v. *Nevitt,* 45 Colo. 231, 100 P. 416, 23 L. R. A. (N. S.) 702, 132 Am. St. Rep. 142, 16 Ann. Cas. 925, is:

"At common law the general rule is that the authority of an attorney to represent his client in an action ceases upon its final determination and the entry of judgment, especially as to the attorney of the defeated party; the attorney of the successful party being empowered under his employment to enforce collection of the judgment by suing out a writ of execution."

The second headnote to *Delaney* v. *Husband,* 64 N. J. Law, 275, 45 A 265, is:

"A retainer to prosecute a suit does not of itself constitute a retainer to bring a writ of error to reverse a judgment rendered in that suit."

The holding of this court is in harmony with the foregoing authorities. In *Sandall* v. *Sandall,* 57 Utah, 150, 193 P.

1093, 15 A. L. R. 620, this court quotes as a correct statement of the law the following from 6 C. J. p. 672, § 184:

"It is always a presumption that an attorney is employed to conduct the litigation to judgment, and no further; the relation of attorney and client and the general powers of the attorney cease upon the rendition and entry of the judgment. There is a distinction in this connection, however, between cases in which the attorney is retained to represent plaintiff, and those in which he represents defendant; in the latter case, the entry of final judgment always terminates the relation and the attorney's authority. *  *  * "

The employment of the partnership by the Silver King Coalition Mining Company was a general employment for the defense of the action, and the extent of such employment was not fixed by the terms of the contract, and by reason thereof such employment is, and must be, controlled, in so far as its termination is concerned, by the rules of law applicable to such state of facts. Considering the fact that at the termination of the action in the Circuit Court of Appeals, and the affirmance of the judgment against the partnership client, the attorneys were called upon by their client to render a bill in full for their services to date, and that such bill was tendered and paid; and in further consideration of the testimony of the president and the vice president of the mining company that the respondent was not employed by that company for services in the Supreme Court of the United States—we can see no escape from the conclusion that the finding of the trial court, that such services rendered were a continuation of the former employment, is not supported by the weight of the evidence. On the contrary, the evidence supports the contention or claim of appellants that the services rendered in the Supreme Court of the United States were under a new employment and were not a part of the original employment of the partnership.          3
In our judgment it is quite conclusive under the authorities that if the appellants, acting individually or as members of the firm of Dickson, Ellis & Schulder, had refused to go forward with the efforts to have the judgment of the Circuit Court of Appeals reviewed, neither the appellants personally nor appellants and respondent as members of that

firm would have been answerable for breach of contract. It
is likewise conclusive, in our judgment, that if the mining
company had been so minded as to employ other counsel and
not re-employ appellants, or appellants and respondent, it
could have done so without even consulting appellants in-
dividually or as members of the firm of Dickson, Ellis &
Schulder, and that the mining company would not have been
guilty of breach of contract in so doing. The contention,
based upon the cross-examination of Mr. Armstrong, that the
old firm of Dickson, Ellis, Ellis & Schulder had been from
the organization of the mining company and still were its at-
torneys, in the light of admitted facts, cannot aid the re-
spondent. The firm of Dickson, Ellis, Ellis & Schulder ter-
minated in 1912 by the death of Ellis, Sr. The firm of Dick-
son, Ellis & Schulder terminated by agreement in 1916. The
record discloses that the name of the respondent, or of the
firm of Dickson, Ellis & Schulder, does not appear on the
record of the proceedings in the United States Supreme
Court. It does not appear that at any time during that liti-
gation the officers of the mining company consulted respond-
ent in relation to this litigation. The respondent must there-
fore, as elsewhere pointed out, rely solely for support of his
claim or contention that the efforts made by the appellants
to have the judgment of the Circuit Court reviewed were
rendered as part of the employment of the firm at the date
of the termination of the partnership. The proven facts do
not warrant that claim or contention.

A statement made by Judge Dickson in a letter written to
respondent March 14, 1919, is relied upon as showing a recog-
nition on his part that respondent is entitled to share in the
fee received for services rendered in the Supreme Court of
the United States. In this letter, following reference to cer-
tain other litigation and the fee received therefor and of
which respondent had had his portion, it is stated:

"The only other business that I know of in which I may have
aught to do, which was pending in the office at the time of my re-
tirement from the firm, is the case of the Conkling Mining Com-
pany v. Silver King. The attorneys for the Silver King Company
may apply to the Supreme Court for a writ of certiorari. If the

writ is granted and I argue the case in that court, you will receive one-fourth and the fees therein."

This statement seems to have had some weight with the trial court in making its findings. The reasons that induced Judge Dickson to make the statement are fully explained in his testimony. No good purpose could or would be accomplished by stating those reasons here. It is sufficient to say that the reasons that impelled the statement did not exist at the time of the institution of this action or at the time of the trial. The promise, if it be a promise, contained in that letter, was without any present consideration, and unless the appellants were under a legal obligation to pay respondent part of the fees mentioned the letter would not and could not be binding on appellants. If statements in letters are to weigh in determining the rights of the parties, then the respondent should not make any claim for any part of the fees, enumerated in item No. 5 on Plaintiff's Exhibit 1, received by Judge Dickson. In a letter dated July 10, 1919, written by respondent in reply to the one of March 14th, respondent says:

"Both you and Mr. Ellis, however, stated to me that I would receive my part of the fees received from pending business, and Mr. Ellis did state that he would not give me any part or portion of the retainers received after I left, but so far as you personally are concerned, you need not send me any part or portion of any fees you may receive hereafter for services rendered by you individually in connection with such old business."

We regard the statements made in each of these letters as not being founded upon any consideration and wholly without probative value in determining the rights of the parties.

It may be contended that if the rule of law as to the termination of employment operated to end the employment upon the affirmance of the judgment by the Circuit Court of Appeals, by parity of reasoning the original employment of the partnership ceased at the date of the entry of judgment in the federal District Court upon the accounting. It is sufficient to say in that regard that no such claim or contention is made by appellants. The fees received for services rendered in the accounting and for services rendered on the

second appeal in the Circuit Court of Appeals were treated by appellants as part of the original employment, and they accounted to respondent for his share under the old partnership agreement. By such acts the appellants have affirmatively recognized that the services rendered up to and including the affirmance by the Circuit Court of Appeals were a part of the firm's original employment and that respondent is legally entitled to receive his pro rata share of any fees received for such services.

The court made this additional finding:

"The court further finds that in fixing the fees for the United States Court work in said cause Dickson and Ellis took into consideration the amount of the fees theretofore received by them when they were unsuccessful and that the $40,000 fee charged was to cover not only services rendered in the United States Supreme Court but other services theretofore performed for which an adequate fee had not been paid when the firm representing said company was unsuccessful in the lower courts."

That finding, in our judgment, has support in the evidence. It is reasonably deducible from the history of the litigation. Whatever part or portion of that fee was for services rendered by appellants prior to the affirmance of the judgment by the Circuit Court of Appeals the respondent is entitled to his pro rata share. The court made no finding as to the value of the services rendered by appellants subsequent to the affirmance of the judgment by the Circuit Court of Appeals, and there is not sufficient data in the record from which the court could make such a finding. In order, therefore, that complete justice be done between these parties, it will be necessary for the trial court to take additional testimony and determine the value of the services rendered by appellants subsequent to the affirmance of the judgment by the Circuit Court of Appeals and to credit appellants with such amount, if the court finds the value of such services to be less than the fee actually rendered, to enter judgment in favor of respondent for his pro rata share of the difference under the old partnership agreement.

The judgment of the trial court respecting all of the items on Plaintiff's Exhibit 1 save only item No. 5 thereof is af-

firmed. The judgment as to said item No. 5 is reversed, and the cause remanded to the district court of Salt Lake county, with directions to proceed in conformity with the views herein expressed. Costs on appeal will be equally divided between the parties.

FRICK, J. The item of $40,000 for special fees earned under what in the record is termed the "Silver King-Conkling" Case, hereinafter referred to as the Conkling Case, to my mind presents the principal difficulty on this appeal. I voted for a rehearing of the case for the reason that after a more careful examination of the record I seriously doubted the correctness of the result reached in the original opinion. After the rehearing was granted and the case was reargued, I again went over the record and also made a somewhat careful research of the authorities. After doing so I have become convinced that the original opinion should not stand. The question, however, still remains: How shall the case be decided?

There is no doubt under the authorities that, ordinarily, where a law partnership is dissolved which is engaged in the general practice of the law, in the absence of a special arrangement or agreement between the partners, each partner is entitled to his pro rata share of the fees earned in the process of winding up the pending business of the partnership, and in case of the death of any one of the partners pending the winding up of the partnership business his heirs or personal representatives succeed to his share. There may, however, be special conditions or circumstances when in an equitable accounting a different rule should apply as between the partners. That such may be the case is recognized by the United States Supreme Court in the case of *Denver* v. *Roane*, 99 U. S. 355, 25 L. Ed. 476. While the general rule is applied in that case, the court nevertheless, in the course of the opinion, said:

"There may possibly be some reason for applying a different rule to cases of winding up partnerships between lawyers and other professional men, where the profits of the firm are the result solely of professional skill and labor."

The same thought is expressed in *Justice* v. *Lairy*, 19 Ind.
App. 272, 49 N. E. 459, 65 Am. St. Rep. 405, and is recog-
nized in *Roth* v. *Boies*, 139 Iowa, 253, 115 N. W. 930. I refer
to the foregoing only for the reason that the record in the
case at bar leaves no room for dispute that the firm of Dick-
son, Ellis & Schulder was employed in the matters in contro-
versy here for the sole purpose of obtaining Mr. Dickson's
experience and skill in particular cases, and that is especially
true with respect to the employment in which the $40,000 fee
was earned. The record is conclusive upon the question that
Mr. Schulder's services were not considered in that employ-
ment, and that he rendered no assistance to Mr. Dickson or
to Mr. Ellis in that matter. Indeed, Mr. Schulder very
frankly testified that it was Mr. Dickson's skill and experi-
ence that was sought in mining cases like the one in question.

Mr. Schulder, however, bases his claim upon the sole
ground that the fee of $40,000 was earned in a case which was
pending when the partnership of Dickson, Ellis & Schulder
was dissolved and that he is entitled to his pro rata share
by reason of that fact. That is, that he is entitled to his pro
rata share of that fee pursuant to the partnership agreement
respecting the division of fees earned by the partnership. If
it be true, therefore, that the $40,000 fee was earned in an
action that was pending when the firm of Dickson, Ellis &
Schulder was dissolved and that it is a fee which was earned
in winding up the pending partnership business of the firm,
then Mr. Schulder should prevail in his contention. The
question, therefore, that arises is: Does the record sustain
Mr. Schulder's contention?

It is unnecessary for me, nor shall I attempt, to go into
detail with respect to what the record discloses regarding
that matter. While it is true (and upon that there is no
dispute in the record) that the Conkling Case was pending
when the firm of Dickson, Ellis & Schulder was dissolved, yet
it is equally true that before the particular proceedings in
which the $40,000 was earned there had been a full and
complete settlement and payment of all the fees that had
been earned in that case by the firm of Dickson, Ellis &

Schulder, and that the settlement and payment was made
for the express purpose and with the intent of paying off the
judgment obtained in the Conkling Case which had been ob-
firmed in the United States Circuit Court of Appeals. After
the fees had been paid, negotiations for the purpose just
stated were opened by the respective parties to the litigation
but failed of consummation. The reasons why they failed are
not now material. It was while negotiations were pending,
however, that it was suggested that a new application for a
writ of certiorari should be made to the Supreme Court of
the United States and that such a writ, if granted, might
prove successful. It was upon that suggestion, and not other-
wise, that Mr. Dickson, Mr. Ellis, and Judge Marioneaux ap-
plied for and obtained the writ from the United States Su-
preme Court and finally succeeded in obtaining a reversal of
the judgment which had become final in the United States
Circuit Court of Appeals. Under all of the circumstances, a
part of which I have very briefly outlined, I have no doubt
that the matter of obtaining the writ of certiorari from the
United States Supreme Court was manifestly in the nature
of a new employment of Judge Dickson and Mr. Ellis who
acted in conjunction with Judge Marioneaux in that matter.
The conclusion that it was so considered at the time by all
concerned, the record, I think, fully justifies. Further, that
what was done in the regard was done in good faith, and not
for the purpose of in any way preventing Mr. Schulder from
obtaining what was justly due him in winding up the busi-
ness which was pending when the partnership was dissolved.
If the new employment had been merely colorable or for
the purpose of depriving Mr. Schulder of his pro rata share
of the fees, a different question would be presented. The
facts and circumstances which caused the application for the
writ of certiorari to be made leave little, if any, doubt in my
mind, however, that the employment of Judge Dickson, Mr.
Ellis, and Judge Marioneaux was by all considered a new
employment and for a special purpose. That it was so con-
sidered is somewhat strengthened by the fact that when
Judge Marioneaux was first employed, the amount of his fee,

it appears, had been agreed upon, but after the writ of
certiorari had been obtained, and when final settlement was
made, the judge demanded and was paid an additional
amount for the services rendered in the certiorari proceed-
ings by him in conjunction with Judge Dickson and Mr.
Ellis. In view of all the facts, therefore, there is no doubt
in my mind that if under the circumstances Mr. Schulder
had died either just before or just after Judge Dickson and
Mr. Ellis were employed in connection with Judge ·
Marioneaux to obtain the writ of certiorari in the United
States Supreme Court, his heirs or personal representatives
would not have been entitled to any part of the $40,000 fee
which was paid to Judge Dickson and Mr. Ellis for the ser-
vices rendered in the certiorari proceedings. Had there been
an existing agreement at the time the firm of Dickson, Ellis
& Schulder was dissolved, that the firm should prosecute the
case upon a writ of certiorari in the Supreme Court in case
they failed of success in the Circuit Court of Appeals a differ-
ent rule would apply. There is, however, not the slightest
evidence of any such an agreement. Nor is it contended that
such an agreement existed. Indeed, the officers of the min-
ing company by whom Judge Dickson and Mr. Ellis were em-
ployed did not so consider the matter. Nor, so far as the
record discloses, did any one else so consider it.

Mr. Schulder's contention, as I have already pointed out,
is entirely based upon the hypothesis that the proceedings
happened to be in a case which was pending when the part-
nership of which he was a member was dissolved. While that
has its proper bearing in the case, yet, standing alone, it is
not conclusive. That such is the law is clearly pointed out by
the Supreme Court of California in the case of *Little* v.
*Caldwell*, 101 Cal. 553, 36 P. 107, 40 Am. St. Rep. 89. In
that case a law partnership was dissolved by the death of one
of the partners. Before the dissolution the partnership had
entered into a contract to conduct certain litigation for a con-
tingent fee. Some time after the dissolution of the firm by
the death of one of the partners and after the case was de-
cided adversely to the contention of the partnership's clients,

as is the case at bar, the surviving partner entered into a new agreement with the partnership's clients whereby it was agreed that the case should be appealed to the Supreme Court and that the contingent fee should be greatly increased in case he was successful in that court. The surviving partner accordingly appealed the case and reversed the judgment of the lower court and was thus entitled to receive the increased fee. The heirs of the deceased partner then brought an action for an accounting and insisted that they were entitled to a division of the entire fees upon the ground that the case was pending at the time of the death of their ancestor and hence was unfinished partnership business. The court, however, held that the heirs were entitled to their share only of the original fees agreed upon, and that the surviving partner was entitled to all of the increased fee. In that case the court recognizes and approves the general rule that the fees derived from all pending partnership business must be distributed in accordance with the partnership agreement, and that each partner is entitled to his pro rata share, although one of the partners in winding up the partnership business may have rendered more services than the other. The court, however, held that the facts of the case carried it outside of the general rule and that equity and justice required that a different rule should be applied. Upon reason and principle I can discover no essential difference between the California case and the case at bar. If there is any difference, the case at bar, in view of all the circumstances, is stronger in favor of the contention of Judge Dickson and Mr. Ellis than is the California case. The California case was appealed after an adverse decision in the court below. In the Conkling Case, a writ of certiorari, which was intended as a writ of review to review the decision of the United States Circuit Court of Appeals, was obtained. In the California case the decision of the lower court was reversed and such was the effect of the decision of the Conkling Case in question here. In the California case the partnership's clients obtained a large advantage by the appeal and such was the case here. In the Conkling Case there was, however, a full settle-

ment and payment of the fees earned up to the time the judgment became final in the Circuit Court of Appeals. In the California case there was no such settlement but there was merely an agreement that the case should be appealed to the Supreme Court and the contingent fee agreed upon by the partnership should be increased. In the Conkling Case, as pointed out by Mr. Chief Justice GIDEON, Mr. Schulder could not have been held liable for any act of negligence, carelessness, or omission on the part of Judge Dickson or Mr. Ellis. It is elementary that in case of legal partnerships each partner becomes liable for the acts of his co-partner if within the scope of the employment. Upon what principle of law, therefore, could Mr. Schulder have been held for any act of negligence or malpractice on the part of Judge Dickson and Mr. Ellis in prosecuting the certiorari proceedings? In view of all the circumstances, therefore, how can it be successfully contended that Mr. Schulder can share in the earnings of Judge Dickson in prosecuting the certiorari proceeding when it must be conceded in advance that he assumed neither a legal nor a moral responsibility in that matter?

It is argued, however, that according to Judge Dickson's own statements which were made in a letter or letters written by him to Mr. Schulder, the former acknowledged that Mr. Schulder was entitled to his pro rata share of the fees which would be earned in case Judge Dickson should argue the certiorari proceedings in the United States Supreme Court. That letter, as pointed out by the Chief Justice, can, however, not be relied on as constituting a contract. Under certain circumstances it might be construed as an admission that there was a contract under which Mr. Schulder might prefer a claim. The language of the letter, however, in and of itself, refutes such a contention. What Judge Dickson wrote in the letter is:

"If the writ (certiorari) is granted and I argue the case in that court (the United States Supreme Court), you will receive one-fourth of the fees therein."

That is very far from admitting that the old firm of Dickson, Ellis & Schulder was under contract or legal obligation

to pay Mr. Schulder any of the fees earned in the certiorari proceeding. At most, it was merely a statement by Judge Dickson that if he argued the case Mr. Schulder "will receive" the amount stated. Judge Dickson did not, and could not, bind the partnership or Mr. Ellis by what he then wrote. As pointed out before, the employment was in a special proceeding and was undertaken after full settlement and payment of the fees earned up to the time that the judgment had become final in the Circuit Court of Appeals and after negotiations for a settlement of the judgment had either partially or wholly failed of consummation. Under such circumstances, Judge Dickson could not bind Mr. Ellis by anything the former may have said or written without Ellis' consent, express or implied. Judge Dickson, however, fully explained why he wrote the letter and why he made the statements therein contained, and no one contradicts or even questions his statements in that regard. Moreover, this is a proceeding in equity for an accounting. The burden is upon Mr. Schulder to prove that he was entitled to his proportion of the fees earned in the certiorari proceeding. In order to succeed, Mr. Schulder must show that Judge Dickson and Mr. Ellis were legally obligated to perform services in the certiorari proceeding as a necessary part of winding up the partnership business. Can any one doubt that if any one had demanded that they or either of them should commence and prosecute such a proceeding and they had refused, they would not have been clearly within their legal rights? Unless there was a legal duty imposed upon them to perform the services in such proceeding as a necessary part of winding up the partnership business, Mr. Schulder cannot recover any part of the fees earned by them in that proceeding.

In my judgment the evidence does not only not sustain the conclusion that Judge Dickson and Mr. Ellis were obligated to prosecute the proceeding as a part of winding up the partnership business, but that it is directly to the contrary. No doubt, the easy way out of the difficulty in this case would be to assume that under the partnership agreement the certiorari proceedings were merely a necessary part of winding up

the pending partnership business. The conclusion, to my mind, is, however, neither fair, just, nor equitable. To my mind the conclusion that is justified by the facts and circumstances is that the certiorari proceeding constituted 'a new and independent employment which was related to the partnership only because the original case had been commenced before the partnership was dissolved. It certainly is still the law that when a law partnership is dissolved by the retirement of the leading member of the firm clients may settle for past services and may terminate the employment of the partnership altogether. True it is that if the client permits the partnership to complete the business, he is bound to pay for the services rendered by it. The client, after the case has gone to final judgment which is adverse to him, however, may also pay the partnership all fees earned up to that time and release or discharge it from further duties. After that he may employ any other lawyer or firm or may employ any member or members of the law firm either alone or in conjunction with another. After that he is liable only to those he has so employed. In this case while it is true that Mr. Schulder is bound by any settlement that was in good faith entered into between Judge Dickson and Mr. Ellis and the mining company respecting fees yet, if it were assumed that both Judge Dickson and Mr. Ellis had been insolvent and financially irresponsible and Mr. Schulder had notified the mining company that he was entitled to a certain proportion of the fees in the certiorari proceeding and that it should not pay them to Judge Dickson or Mr. Ellis or to either of them for the services rendered and the mining company had nevertheless paid the fees to Dickson and Ellis or to either of them, could Mr. Schulder legally hold the mining company for his share of the fees? The answer is obviously no, for the reason that in so far as the certiorari proceeding is concerned Mr. Schulder had no legal relationship with the mining company and it was under no legal obligation to him. So far as the $40,000 item is concerned, therefore, Mr. Schulder cannot prevail.

As to the other items in dispute it is sufficient to say that

they stand upon a different footing. The district court was no doubt justified in finding that those items constituted a part of the fees earned in winding up the partnership business of the firm. I can see no good reason for disturbing the court's findings and conclusions of law regarding those items. Upon the other hand, I can discover no good reason for upholding the findings of fact and judgment respecting the $40,000 item.

I feel constrained to add that by anything I have said or omitted I do not wish to be understood as holding or intimating that Mr. Schulder did not in good faith believe that he was entitled to his pro rata share of the $40,000 item. I am convinced from the record that he was just as firmly convinced that he had a legal right to his pro rata share of the fees earned in the certiorari proceeding as I am convinced that he is not legally entitled to any part of those fees. Neither do I wish to be understood by what I have said respecting Judge Dickson's employment that Mr. Schulder was incompetent or that he was not a good lawyer. What I mean is that at the time the firm was employed by the mining company Mr. Schulder was a young lawyer of very limited experience, while Judge Dickson was easily the leading mining lawyer of the western country and so recognized by both bench and bar. It is for that reason that Judge Dickson's services were desired by the mining company rather than the services of Mr. Schulder. I have merely attempted to outline the facts and circumstances as they really exist; no more; no less.

I am of the opinion, therefore, that the findings of fact, conclusions of law, and judgment awarding to the plaintiff his pro rata share of the $40,000 item should be reversed. In other respects I concur in the views and judgment of the CHIEF JUSTICE.

: WIGHT, District Judge. I concur in the views and reasoning of Mr. Justice FRICK, and in the judgment as entered.

CHERRY, J. I dissent. The legal relationships of the parties to this litigation were definitely fixed by contracts admit-

ted and proved. They were partners upon the terms fixed by themselves. All disparities that may have existed between them in eminence, virtue, or merit were adjusted by their own voluntary agreements, and that subject is not open to further inquiry. The partnership co-operated harmoniously for four years, during which time a large volume of "pending and unfinished business" accumulated with the firm. No matter how or by whom the employment or business was attracted, it belonged to the firm. It was something of substance and value, recognized as a partnership asset, and about which the partners had the legal right to contract. When the partnership was dissolved, the partners agreed that the pending and unfinished business should be wound up and completed by the partners and the fees arising therefrom divided between them according to their respective shares in the partnership. An additional and important feature of the agreement of dissolution was the undertaking of Mr. Dickson to individually perform the services in the completion of the mining business on hand. This is undisputed. On this subject appellants say in their reply brief:

"There is no dispute as to the fact that Mr. Dickson, when he retired from the partnership, agreed that he, personally, would carry on, conduct and finish all mining litigation pending in the office of said former partnership at the time of his withdrawal."

The Conkling-Silver King Case, the subject of controversy, was admittedly "mining litigation," and it was litigation pending and unfinished with the partnership at the time of dissolution. The action was in the federal court, against the Silver King Coalition Mining Company, to recover for ores alleged to have been taken from the plaintiff's ground. The partnership represented the defendant. At the first trial, in 1912, the defendant had judgment. Plaintiff appealed to the Circuit Court of Appeals, where the judgment was reversed and the cause remanded to the trial court for an accounting. The accounting was had in 1917, and judgment rendered thereon against defendant. Thereafter the defendant appealed to the Circuit Court of Appeals and lost. At this time the defendant company made a futile effort to compromise the controversy by offering a sum less than the judgment

against it, and in connection therewith paid their attorneys for services rendered up to that time. Failing to compromise the matter, the company, through Messrs. Dickson and Ellis, reinforced by the aid of Mr. Marioneaux, who was separately and independently employed, pursued the litigation further to the Supreme Court of the United States by writ of certiorari, where a favorable judgment for defendant was finally had. For the services rendered in the proceedings before the Supreme Court of the United States the appellants received $42,000, which is the main bone of contention in this action.

Pursuant to the dissolution agreement, the partners wound up and completed a large volume of business and divided the fees arising therefrom, amounting to many thousands of dollars, among themselves amicably and according to the basis agreed upon. It is significant that in the Conkling-Silver King Case, the very item now in dispute, the fees for taking the defendant's appeal to the Circuit Court of Appeals, which was taken long after the dissolution of the partnership, were divided with Schulder without question according to their agreement, notwithstanding he personally rendered no services whatever in the proceedings.

Bearing upon the question of what was understood and intended by the partners in their agreement for the disposition of their pending and unfinished business is the letter of Dickson to Schulder, dated March 14, 1919, in which he writes:

"The only other business that I know of in which I may have aught to do, which was pending in the office at the time of my retirement from the firm, is the case of *Conkling Mining Company* v. *Silver King*. The attorneys for the Silver King may apply to the Supreme Court for a writ of certiorari. If the writ is granted and I argue the case in that court you will receive one fourth of the fees therefrom."

Tested by the usual judicial standards, I think the foregoing facts establish in a most convincing and satisfactory manner that the business in dispute was firm business within the meaning and intent of the contract. The objections urged against this conclusion are, in my judgment, readily answerable. It is repeatedly asserted that Schulder performed no

part of the services in the matter in controversy. The express agreement of Dickson to personally conduct, carry on, and finish "all mining litigation pending in the office" disposes of that. It is said that "it quite conclusively appears from the testimony of Mr. W. W. Armstrong and that of W. Mont Ferry, president and vice president, respectively, of the mining company, at the date of the affirmance of the judgment by the Circuit Court, that Schulder was not employed by that company to represent it in this litigation," and evidence is quoted to the effect that no individual employment of Schulder was made at that time, but that arrangements were made through Mr. Ellis for the employment of associate counsel; that the firm of Dickson, Ellis & Schulder were attorneys for the company from the time of its organization and to the best knowledge and belief of the witness continued to the day of the trial. Schulder never claimed or pretended that he was individually employed by the mining company. His claim rests upon the employment of the partnership, and that employment, even to the day of trial, was affirmed by the testimony of Mr. Armstrong.

The fact that the mining company, when attempting to compromise with its adversary, obtained a statement of account from the partnership for services rendered to date and paid it, is urged as a circumstance tending to show a termination of employment. The facts justify no such inference. Nothing whatever was said or done indicating an intention to dismiss the attorneys from their employment. On the other hand, it was clearly the intent to pursue the litigation if the compromise failed. And when the compromise did fail, the legal proceedings went forward absolutely without any new employment of the attorneys who had previously acted.

It is next urged that the business in question was not firm business, because, as between attorney and client, the authority of the attorney ceases when judgment is entered, especially as to the attorney for the defeated party; that therefore the employment of the firm ceased when judgment was rendered against the mining company. Of course, there is no

controversy here between attorney and client. The question under consideration involves the rights of partners as between themselves. The relation of a client to his attorney differs in its nature from the relation of one partner to another, and the relationships are governed by legal and equitable principles appropriate to each. A rule of law applicable to one does not necessarily apply to the other. The principle of good faith is the basis of the internal law of partnership.

"The utmost good faith is due from every member of a partnership towards every other member; and if any dispute arises between partners touching any transaction by which one seeks to benefit himself at the expense of the firm, he will be required to show not only that he has law on his side but that his conduct will bear to be tried by the highest standard of honor." Lindley on Partnership, 364.

A client has the right to discharge his attorney at any time, either with or without cause. 6 C. J. 676. But one who has made a contract with a partnership for legal services cannot, after the death of one partner, make a new contract with the surviving partner for the same services, to the detriment of the estate of the deceased partner. *Clifton* v. *Clark,* 83 Miss. 446, 36 So. 251, 66 L. R. A. 821, 102 Am. St. Rep. 458, 1 Ann. Cas. 396. Nor is a surviving partner of a partnership between lawyers, dissolved by the death of one member, permitted to make gain for himself at the expense of the estate of his deceased partner, by consenting to the termination of a contract of employment with the partnership, and making another relating to the same subject-matter, in the profits of which he alone is to participate. *Little* v. *Caldwell,* 101 Cal. 553, 36 P. 107, 40 Am. St. Rep. 89. The legal rules applicable to the relation of attorney and client do not control the relations of partners as between themselves. The latter relationship is one of mutual trust and confidence and imposes upon the members of the firm the obligation of acting with the utmost good faith toward each other. 30 Cyc. 438. Accordingly, their dealings with each other are governed by purely equitable principles.

That the parties themselves did not intend or understand

that the unfinished business with which they were dealing should be circumscribed by the strict legal rules relating to attorney and client is very plainly indicated by the practical construction placed upon the contract by themselves. It is admitted that the partners themselves recognized and treated the Conkling-Silver King Case as unfinished firm business, subject to their contract of dissolution, by voluntarily sharing with each other the fees earned on the defendant's appeal to the Circuit Court of Appeals, which was taken long after the partnership was dissolved, and in which Schulder performed no part of the service. If at common law the authority of the attorney for the defeated party is terminated by the entry of judgment, was not the authority of the firm of lawyers here involved terminated by the entry of judgment in the first instance against their client? Yet, they went forward with the appeal and treated the matter as unfinished firm business within the meaning of their contract. Does the "obligation to perfect fairness and good faith," which extends not only to persons who are actually partners but to persons who have dissolved partnership but not completely wound up and settled partnership affairs (Lindley, Partnership, 364), permit appellants to now claim an interpretation of their contract directly contrary to that previously placed upon it by themselves?

The letter from Dickson to Schulder is a direct, express, and unequivocal admission of the very fact in controversy. It states in words that the item in dispute was pending in the office at the time of dissolution. To make positive that the item of business was understood to be within the contract of the partners, it is stated that if the certiorari was granted and the case argued that Schulder would receive his share of the fee.

This letter is important and valuable as evidence. It is not depended upon as a contract. The contract of the parties was established by uncontradicted evidence independent of the letter. It is therefore no objection to say that there was no present consideration for the letter. But it is said that—

"The reasons that induced Judge Dickson to make the statement are fully explained in his testimony. No good purpose could or would be accomplished by stating those reasons here. It is sufficient to say that the reasons that impelled the statement did not exist at the time of the institution of this action or at the time of the trial."

The matter stated in the letter is so directly pertinent to the particular question in dispute that I think, it important to examine into any explanation which could justify the rather sweeping assertion that the statements made were "wholly without probative value in determining the rights of the parties."

The "explanation" of Mr. Dickson, as contained in appellants' abstract, is as follows:

"I made that statement. The circumstances have changed. The letter of Mr. Schulder in reply to that is one thing, and the fact that the firm was paid up for all business it had done for the Silver King prior to the time when the second writ of certiorari was applied for is another thing and the fact that I was relieved of fear with respect to the boy is another thing. Now, when I wrote that letter I expected to do just as I had been doing, for the reasons I have given you. Little Dickson died on the 6th of February, 1920. This statement made by me relative to the payment of one-fourth of the fees in the Conkling Case was not made upon the condition the little boy would continue to live. I didn't think about that at all; I expected the boy would live. The circumstances were altered before that by Schulder's letter, in which he said I needn't account to him for anything else I personally did. That was one reason. Of course, after the little boy died, I was relieved of the fear that I had theretofore had. As I said before, all other considerations aside, after the little boy was taken, I never would have divided another dollar with Mr. Schulder." (The boy referred to was the son of Schulder and Dickson's daughter. The parents had been divorced and the custody of the child awarded to its mother. Mr. Dickson testified that it was his desire to take his daughter and the child to California to live, and that he feared Schulder would object.)

In estimating the worth of this "explanation," it is well to bear in mind the only real controversy under consideration; that the parties entered into a copartnership upon specic terms; that they dissolved the partnership by mutual agreement and contracted with each other to wind up their pending and unfinished business and divide the fees arising

therefrom according to their respective interests in the former partnership are all settled facts in this case, either conceded or proved beyond dispute by evidence independent of the letter. The decision here turns upon the question of whether the particular item in controversy was business pending and unfinished with the firm at the time of dissolution within the meaning and intent of the contract of dissolution. The letter of Mr. Dickson is a plain admission of the fact that the item in dispute was such business. There is nothing in the "explanation" which refers to or explains away this feature of the letter. Mr. Dickson does not pretend that the statements made in the letter were not true; he merely asserts that his general attitude towards Schulder had changed to the extent that "all other considerations aside, after the little boy was taken, I never would have divided another dollar with Mr. Schulder." If this disposes of the evidentiary effect of the letter and renders it "wholly without probative value," why by the same token does it not destroy and nullify his whole contract made at dissolution for sharing the fees from the firm's unfinished business? The "explanation" does not pretend to show why the particular fee in the Conkling-Silver King Case was not subject to division; it attempts to justify the witness in his resolution not to divide any fee whatever with Schulder. (Of course, this position could not be maintained. Notwithstanding the alleged reasons advanced for not "sharing another dollar with Schulder," which had equal application to all unsettled items, as well as to the Conkling-Silver King item, the majority opinions affirm the decree of the trial court which requires Dickson to account for fees in at least nine cases.) The witness in his supposed "explanation" did not differentiate the Conkling-Silver King Case from any other firm business. What he said applied equally to all unsettled partnership items. In short, the probative value of the letter consisted in its being an admission against interest of one of the litigants that the Conkling-Silver King Case was unfinished firm business and subject to the contract for division. As proof of that fact it stands undenied and unimpaired by any explanation.

I quite disagree with Mr. Justice FRICK that the case of
*Little* v. *Caldwell*, 101 Cal. 553, 36 P. 107, 40 Am. St. Rep.
89, supports the legal conclusions reached by him in his con-
curring opinion.  To my understanding the case cited stands
for the very contrary.  The facts were that a firm of lawyers
had a contract for a contingent fee of 15 per cent. in certain
litigation.  The first trial resulted in a judgment adverse to
their clients.  Pending appeal, one of the partners died.
Thereafter the clients, being unable to advance the necessary
costs of the litigation, entered into a new agreement with the
surviving partner whereby, in consideration of his advancing
the necessary expenses, the fee was increased from 15 per
cent. to 60 per cent. of the amount recovered.  The litigation
was prosecuted to a successful conclusion and the surviving
partner received a fee of $12,000.  He refused to account to
the representatives of his deceased partner for more than
$100, and was sued in equity for an accounting.  The trial
court sustained a demurrer to the complaint and dismissed
the action.  Upon appeal the Supreme Court said that the
partnership contract was such ''that upon the death of one
member of the firm the client may elect to consider the em-
ployment as terminated (citing cases).  This would be the
rule in controversies between the client and surviving mem-
bers of the firm, where such election was properly made by
the client; but the option to declare the contract terminated
for such a cause is with the client, and if he does not do so,
but is willing to intrust the survivor with the further man-
agement of the litigation in which the firm was employed, the
survivor is bound to complete the unfinished contract for the
benefit of the partnership; and, unless it was otherwise
agreed upon between the partners, he would not be entitled
to compensation from the partnership or from the estate of
his deceased partner, for his services in doing so.''  The
court said that the ''surviving partner occupies the position
of a trustee in relation to the unsettled and unfinished busi-
ness of the firm,'' and that ''he is not permitted to make gain
for himself at the expense of the estate of the deceased part-
ner by consenting to the extinguishment of a contract belong-

ing to the partnership, and the substitution therefor of another relating to the same subject-matter, and in the profits of which he alone is to participate. Whatever may be the effect of such new or substituted contract as between the immediate parties to it, a court of equity, in settling the accounts of the partnership, will not treat it as an entire extinguishment of the original contract, or deny the right of the representatives of the deceased partner to an equitable participation in the profits realized from the latter contract, and which may be regarded, so far as concerns the partnership, as only a modification of the former contract. This rule is particularly applicable in the settlement of the partnership accounts of attorneys at law, when the firm has been dissolved by the death of one member, and wherein contracts not fully performed often constitute a large part of the assets of the partnership, and which it is the duty of the survivor as far as possible to complete and preserve for the benefit of the firm.'' The court further stated that the contract in question ''is still to be viewed by a court of equity as an asset of the partnership.''

And treating the new contract as a mere modification of the old one, made for a special purpose and consideration, and upon the express grounds that the partnership would lose no rights thereby and that no principle of equity would be violated, the court held that the surviving partner would be permitted to retain the increased amount of the compensation by reason of the increased personal risk which he assumed, but that he must account to the plaintiff for one half of the 15 per cent., provided for in the partnership contract.

As between the partners the full right of the deceased partner was preserved and enforced, notwithstanding the legal right of the client to terminate the employment, and the fact that a new contract of employment was made with the surviving partner. The case to me is clearly authority for the view that equity will prevent a partner, after dissolution, from entering into any contract for his own benefit, relating to unfinished partnership business, if his copartner as such is in anywise injured thereby.

The judgment of the trial court is reversed by the majority upon the ultimate finding of fact that the item in controversy was a fee earned, not from partnership business, but from a new and distinct employment of appellants after the dissolution. I have endeavored to show that equity will not permit such an employment, but aside from this consideration I submit that there is no evidence in the record which supports such a finding. Although all of the persons who could have participated in making a contract seem to have been either present in court or easily accessible, the only witness who approached the precise question was Mr. Ferry, the vice president of the Silver King Company, and he stated that it was difficult for him to answer as to whether there was a new and distinct employment of attorneys in the case in controversy, because he did not know. No other evidence on the precise question was produced. It seems to me that "grounds, more relevant than this," should be required to overturn the findings on the subject by the trial court.

In view of the equitable principles which control the relationship of partners as between themselves, I have no difficulty in concluding that the facts and circumstances of this case amply justified the trial court in his findings and judgment. Indeed, the practical construction placed by the parties themselves upon their agreement by voluntarily sharing with each other the fees from numerous other items of business, precisely in the same category with the item in question, and the direct and unqualified admission of the very fact in dispute by Judge Dickson, are obstacles to a contrary finding which to me are insurmountable.

I think the judgment should be affirmed.

THURMAN, J. I concur.

STRAUP, J., did not participate herein.