## BUZIANIS v. BUZIANIS et ux.

No. 5185.  Decided November 30, 1932.  (16 P. [2d] 413.)

*P. C. Evans* and *King & King,* all of Salt Lake City, for appellants.

*E. Le Roy Shields,* of Tooele, for respondent.

ELIAS HANSEN, J.

Tom Buzianis and Gust Buzianis are brothers. Prior to February 2, 1929, they were copartners engaged in the dairy and live stock business in Tooele county, Utah. Ethel Buzianis is the wife of Gust. She was made a party defendant because she was one of the grantees in a deed which plaintiff claims is partnership property. Tom alleged in his complaint that the partnership began in 1910. Gust alleged in his answer that it began in 1920. Each prayed that the copartnership be dissolved and that the partnership property be divided according to their respective rights. Each partner further prayed that the other be required to render an accounting of all partnership property and money which the other had appropriated to his own use. The trial court appointed Nellie Banta as referee to take the evidence. She did so and certified the same to the trial court. Findings of fact, conclusions of law, and a decree were made by the

court below upon the evidence adduced before the referee. The defendants appeal. By their assignments of error they attack various of the findings because, as they claim, they are not supported by, but are contrary to, the evidence.

This being a suit in equity, it is our duty to examine the evidence, and where there is a conflict to pass upon the relative weight thereof. Tom and Gust Buzianis were the only witnesses who testified. There is an irreconcilable conflict in their testimony on a number of questions ▮ which divide them. One cannot read their testimony without being convinced that neither is entirely frank, especially is that so with respect to the testimony of Gust. However, some of the facts upon which they are agreed throw light on some of the matters concerning which they disagree. The trial court found that a partnership was formed in 1910 by Tom and Gust and their brother James, and that all the real property conveyed to Gust and James prior to 1920 belonged in equal shares to the three brothers. Appellants assign such finding as error. There is no conflict in the evidence as to the following facts: Plaintiff came to Utah from Greece in 1907. At that time he was fifteen years of age. His brother James was twenty-two and Gust was twenty-six. Gust and James had been in Utah some time before Tom came here. They were working at Bingham, Salt Lake county, Utah. After Tom came to Utah the three brothers lived together at Bingham for about three years. They did their own housekeeping and cooking. They were all employed. Tom worked as a bootblack and did janitor work in a barber shop. He attended school at Bingham for about three months. In November, 1910, Gust and one Peter M. Katerites purchased 11.05 acres of land in Tooele county, Utah. They paid therefor the sum of $2,000. Soon after the purchase of the land, Gust left Bingham, and in a small way, he and Katerites began to operate a dairy on the land they had theretofore purchased. James remained at Bingham until 1915 or 1916. Apparently Tom remained at Bingham for a time and then went to Salt Lake

City, where he worked as a bootblack for seven or eight months. For some months he was out of employment. In 1912 Tom went to work on the dairy farm which was purchased in 1910 by Gust and Katerites. He was employed by Katerites, who agreed to pay him $350 per year. During 1912 Gust and Tom worked on the farm and operated the dairy. On October 2, 1912, Katerites conveyed his one-half interest in the farm and dairy to James Buzianis. The consideration mentioned in the deed of conveyance was $1,200. Katerites failed to pay Tom the full amount of wages that he agreed to pay, and Tom brought an action to collect the amount owing and secured a judgment in the sum of $220.25. From 1912 until February 2, 1929, Tom and Gust worked together in the operation of the dairy and farm lands which are involved in this litigation. From time to time additional lands and livestock were purchased and paid for out of the profits derived from the farm and dairy; 23.42 acres of land were purchased in 1913 and conveyed to Gust and James; 90.50 acres of land were purchased in 1915 and likewise conveyed to Gust and James. In 1915 or 1916 James quit his work at Bingham, and from then until his death, July 24, 1920, all three brothers worked together in operating the farms and dairy. The business was conducted in the name of the Brookside Dairy Farm, Buzianis Brothers; 60.35 acres of land were purchased in 1918 and conveyed to Gust and James. In 1919 twenty head of Holstein cows were purchased for the sum of $2,200. After the death of James, Gust and Tom continued to operate the farm lands and dairy. Soon after the death of James his estate was probated. Tom and Gust signed the petition for letters of administration. The petition recited that James, at the time of his death, was the owner of an undivided one-third interest in the lands which stood in his and Gust's names. In due time an undivided one-third interest in the property was distributed to the father and mother of James, and later Tom and Gust purchased the property distributed to their parents who lived in Greece. In 1923, 38.20 acres of land

were purchased and conveyed to Gust and Tom. In that same year Tom was married. He and his wife remained with Gust and his family until 1928. They and their families lived in the same house and ate at the same table. In 1923 Gust and his wife conveyed to Tom an undivided one-third interest in the 11.05 and the 23.40 acres of land which theretofore stood in the name of Gust and James. In 1927, 19.50 acres of land were purchased and conveyed to Tom and his wife. In 1928, 40 acres of land were purchased and conveyed to Gust and his wife. A water right was conveyed with some of the lands involved in this controversy. In the latter part of 1927 or the early part of 1928, Gust and Tom had a quarrel which resulted in Gust ordering Tom out of the house. During 1928 Tom constructed a house on one of the tracts of land involved in this litigation. The cost of construction was paid for with funds derived from the sale of milk produced by the partnership dairy. The house so constructed cost about $2,000. Some material belonging to the copartnership was used in its construction. On February 2, 1929, Tom and Gust divided some of the personal property belonging to the partnership, and since that time they have not been conducting a copartnership business. As bearing upon the question of when the partnership began, Tom testified: That while the three brothers were living at Bingham they saved some money which was given to Gust; that a judgment in the sum of $220.25, which he secured against Katerites for his labor in 1912, was satisfied by Tom and accepted by Katerites as a part of the purchase price of the one-half interest in the 11.05 acres of land which Katerites conveyed to James on October 2, 1912; that he received no wages at any time from his brothers for his work in assisting them in operating the farms and dairy; that James told him they were partners; that he negotiated for the purchase of a number of the tracts of land that were conveyed to Gust and James; that the money used to purchase the various tracts of land and personal property was the proceeds of their joint earnings; that he did not ask

that he be made a grantee in the deeds of conveyance because he thought he could trust his brothers; that he did not talk with Gust about being a partner in the business because he thought it was understood he was a partner.

Gust testified that, at all times prior to the death of James, Tom was working for wages; that at first he was paid $300 a year and later $350 a year; that Tom was paid in the fall of the year; that he was paid in money; that on one occasion he saw James pay him; that just before James died he said he had paid Tom in full for the work he had done; that he knew nothing about the judgment which Tom secured against Katerites. Gust further testified that at the time James died he (Gust) was the owner of a two-thirds interest of the property which stood in their names; that he had put more money in the partnership than had James, and that James, just before he died, conveyed to him a two-thirds interest in the property; that Tom had no interest in the 40 acres of land which was conveyed to Gust and his wife in 1928; that while the deed was made out in 1928, it was held in escrow until 1929, when he paid for the land and received the deed. The deed which Gust claims was given to him by James before he died was not produced, although Gust stated that such deed was in the possession of his attorney. Had there been such a deed, it doubtless would have been produced.

This evidence does not support the finding that a partnership was formed between the three brothers in 1910, or that Tom had any interest in the 11.05 acres of land purchased by Gust and Katerites prior to October 2, 1912, when Katerites conveyed his one-half interest therein to James. Tom did testify that he earned about $15 per week while he and his brothers were living at Bingham, that they had saved some money, and that the money so saved was in the custody of Gust. Tom did not testify as to what it cost him for board and clothes, or what amount of money was saved by the three brothers, or what was earned by Gust and James. During part of the time he attended

school. So far as appears from the testimony, Tom did not put any money into the business until 1912, when he claims that his judgment against Katerites was applied upon the purchase price of the one-half interest conveyed to James. There are, however, a number of admitted facts which tend to show that the three brothers regarded themselves as co-partners or as being engaged in a joint enterprise from and after October 2, 1912. Apparently the three brothers had an equal voice in the affairs of the business. In 1919 when the Holstein cows were purchased for $2,200, Gust admits one-third of the purchase price was paid by Tom. It is quite significant that in 1922 Gust and his wife conveyed to Tom, without any consideration being then paid, a one-third interest in the 11.05 acres and the 23.42 acres of land theretofore standing in the names of James and Gust. The fact that Gust and Tom stated in their petition for letters of administration of the estate of James that he was, at the time of his death, the owner of an undivided one third interest in the land theretofore purchased and used by the partnership, likewise tends to support Tom's claim that the three brothers regarded themselves as equal partners in the business. While Gust testified that Tom was paid a wage, there is no other evidence which tends, in any way, to support his claim. The testimony of Tom was that he received only his board and clothes. Gust having made the claim that Tom was paid a wage prior to the death of James, the burden was cast upon him to establish that fact by a preponderance of the evidence. He has failed to discharge that burden. It may be noted that if Tom has not been paid his wages, the amount owing to him for his labor from 1912 to 1920 might well be equal to or exceed the value of a one-third interest in the property which stood in the names of Gust and James at the time of the death of the latter. The preponderance of the evidence now before us shows that from and after November 2, 1912, until the death of James in 1920, the three brothers conducted the business upon the basis that they were engaged in a joint enterprise in which

each was entitled to an equal share; but it does not support a finding that Tom had any interest in any of the property here involved prior to 1912. It is agreed that Tom and Gust were copartners from 1920 until February 2, 1929. When James purchased the undivided one-half interest in the 11.05 acres of land theretofore owned by Katerites, Gust was the owner of the other one-half. Before the purchase was made James held a mortgage in the sum of $1,000 on the one-half interest belonging to Katerites. The day after the deed from Katerites to James was executed, James released his mortgage. The deed recites that the consideration paid by James for the one-half interest was $1,200. It thus appears that the total of the money owing by Katerites to James on the mortgage and to Tom on the judgment was approximately equal to the amount paid for the one-half interest theretofore owned by Katerites. Thus, at the time the three brothers began their operation, Gust furnished one-half of the capital, or approximately $1,000 more than Tom. Under the evidence in this record Gust is entitled upon a dissolution of the partnership to a credit of $1,000, together with legal interest thereon from October 2, 1910, to February 2, 1929. It also appears that in 1919 Gust borrowed from his wife the sum of $700, which was applied on the purchase price of the Holstein cows that were purchased by the partnership. The exact date of the purchase is not shown. He is also entitled to a credit for the $700, together with legal interest thereon from the date it was advanced until February 2, 1929. All of the other property purchased by the copartnership was paid for with profits derived from the business.

The trial court found that in 1920 Gust took from the partnership funds the sum of $1,300 and appropriated the same to his own use by sending it to Greece for the purchase of Greek francs. Appellants complain of that finding. The evidence is quite unsatisfactory as to the amount that was so taken and used by Gust. Tom testified that he saw a letter written for Gust wherein

$2,000 was mentioned in connection with the purchase of Greek francs. He did not know how much, if any, money was expended by Gust for that purpose. Gust's testimony as to the amount taken by him for that purpose is equally unsatisfactory. Apparently he claims that only $1,000 was expended for that purpose and that the money so used belonged to him. It appears that the money used by Gust was on deposit at the Deseret Savings Bank at Salt Lake City, Utah. It would seem that the amount that Gust used for that purpose and the date it was taken can be readily ascertained. The evidence supports the finding that Gust should be charged with the amount so taken together with lgeal interest thereon from the date it was taken to February 2, 1929. On November 18, 1927, Gust loaned to George Mantos, the owner of the Polly Bakery, the sum of $1,500. A note secured by a mortgage was taken in the name of Gust as evidence of the indebtedness. The court charges Gust with the money so loaned with interest thereon at 8 per cent per annum from the date the loan was made. Appellants complain because they were charged with the amount of the money so loaned. It is urged that the amount owing upon the note may not be collectible. So far as appears Tom was willing that the loan be made. While the note and mortgage were taken in the name of Gust, it cannot be said that Gust has appropriated the money to his own use. The note and mortgage are partnership property and should be so regarded in the division of the property between Gust and Tom.

In 1928 Gust received $195 from the Utah Power & Light Company in payment of a judgment in a condemnation proceeding of some of the land owned by the partnership. The court found that Gust used the money for his own purposes. Appellants complain of that finding. Gust testified that the money was used for partnership purposes, but he was unable to state the particular purpose for which it was used. No books were kept by either of the partners, and it is not to be expected that they can remember

the exact purpose for which various sums of money were expended. It appears that the partners took from the partnership fund such money as they needed for living expenses, and no attempt was made to keep a record of the amount received for that purpose by either of the partners. Tom collected all of the money derived from the sale of the milk. He used what he needed for his living expenses and deposited the remainder in the bank. Upon his record the $195 received by Gust from the Utah Power & Light Company stands upon the same basis as various other sums of partnership money received by the respective parties without a specific accounting as to the use to which it was put. The parties having conducted their business for a period of more than thirteen years without keeping any record, it is impossible to ascertain the amount received by each for their living expenses. Each of the copartners took from the partnership fund such money as he and his family needed for living expenses without any apparent intention of requiring an accounting of the money so used. The parties having so conducted their business for so many years, it is now apparently impossible to ascertain the amount of money that each of the partners has used for his living expenses. Whether the $195 was used by Gust for his living expenses or for the payment of some obligations of the copartnership, the result is the same. He should not be charged with $195 unless he used it for his own purposes other than his living expenses. The evidence does not justify a finding that it was so used.

The trial court found that in 1917 Gust placed to his credit in Walker Brothers Bank at Salt Lake City, Utah, the sum of $1,500. He was charged with $1,500 together with interest thereon at the rate of 4 per cent per annum from and after 1917. The evidence touching the amount of money that was placed in the Walker Brothers Bank is far from being definite. It does appear that at a time which is not definitely fixed there was $1,500 in the bank, but according to the testimony of Gust only $1,000 was de-

posited in the bank. Gust claims the other $500 is accumulated interest. Tom did not seem to know just how much was placed in the Walker Brothers Bank or when the total amount equaled $1,500. It would seem to be a simple matter to ascertain the exact amount of money that was in the bank. The evidence does support the finding that the money in the Walker Brothers Bank belongs to the copartnership.

Complaint is also made by appellants because of the division that the trial court made of the partnership property. The trial court found that the improvements on one of the tracts of land which was awarded to Gust, together with the implements and machinery, which Gust received at the time the personal property was divided, was of the value of $5,000. Appellants complain of that finding. The only evidence to support the finding is the testimony of Tom. If his testimony was competent at all as to the value of the improvements, machinery, and implements, it is entitled to but little weight. At the outset of his examination touching the value of the improvements, implements, and machinery, he stated that he did not know their value. No foundation was laid to show that he was qualified to testify as to values unless it may be said that the fact that he was a farmer, and knew the price that was paid for the implements and machinery, constitutes such a qualification. The testimony in this record touching the value of the implements and machinery received by Gust as well as the value of the improvements upon the property awarded to Gust is, to say the least, most unsatisfactory.

While it is to be expected that difficulties will be encountered in the adjustment of the rights of copartners who have engaged in business for a long period of years without any records of their transactions, there is no good reason why many of the difficulties encountered in attempting to reach a proper conclusion in the instant case cannot be overcome if this case is remanded to the court below and the parties given an opportunity to produce further evidence touching a number of matters which divide them and which

are apparently capable of definite proof. In the light of such facts, and in the light of the further fact that, as heretofore indicated in this opinion, a number of the findings must be disapproved, we have concluded that the decree should be reversed, and the whole cause remanded to the court below with directions to grant a new trial.

In view of the fact that a new trial is to be had, there are some other matters which are not disposed of in the judgment appealed from, but which should be settled upon the new trial. It appears that at the time of the trial the partnership had some outstanding indebtedness. No provision was made by the judgment appealed from as to how or who is to pay such indebtedness. It appears that in 1920 Tom used $100 of the copartnership money with which to purchase some mining stock for himself. Apparently he should be charged with the money so used, but no mention of that transaction is made in the findings of fact, and so far as appears was not taken into consideration in the decree. It also appears that Gust loaned to his wife's relatives. the sum of $600 of partnership money which, at the time of the trial, had not been repaid. Neither the findings nor the judgment make any disposition of that obligation. Upon this record there would seem to be no reason why Gust should not be charged with that money. Evidence was offered with respect to a truck and a touring car which were purchased with funds belonging to the copartnership. The judgment appealed from does not dispose of either the truck or the touring car. These matters were involved in the accounting and should have been determined by the court below.

The judgment is reversed. This cause is remanded to the district court of Tooele county with directions to grant a new trial. It is directed that the total costs of this appeal and the costs in the court below be taxed one-half to plaintiff and one-half to the defendants.

CHERRY, C. J., STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.