## THOMAS v. BUTLER et al.

No. 4967. Decided March 12, 1931. (296 P. 597.)

*Robinson & Robinson,* of Provo, for appellant.

*Christenson & Straw,* of Provo, for respondents.

BATES, District Judge.

The plaintiff brought this action in the year 1928 to secure a determination of the right to the use of water arising on land owned by him and to secure a judgment of the court enjoining and restraining the defendants from interfering with his use thereof.

The defendants deny that plaintiff has any right to the use of the water and seek similar injunctive relief against the plaintiff. Judgment was in favor of the defendants. Plaintiff has appealed to this court, claiming that the evidence does not support the judgment.

After describing certain lands in Utah county belonging to him, the plaintiff in his complaint alleges in substance that there arises and flows upon said lands, and has done for more than fifteen years, approximately two cubic feet of water per second of time; that the water comes to the sur-

face in a large number of places known as the Wylie Spring and Thomas Springs along the south boundary of said lands; and that it is now and has been for a great many years collected in a ditch belonging to plaintiff along the south boundary line of said lands, and is and has been for more than fifteen years used by plaintiff for irrigation purposes. The complaint contains numerous other allegations relative to the trespasses of the defendants and the resultant injuries flowing therefrom, but they are unnecessary for the purposes of this opinion.

The defendants admit plaintiff's ownership of the described lands, that the water arises thereon substantially as alleged by plaintiff, and that the defendants have gone onto plaintiff's lands and taken and diverted said waters and applied them to the irrigation of their own lands. By way of affirmative defense and counterclaim the defendants allege that more than thirty years ago they and their predecessors went upon the lands claimed by the plaintiff and other lands adjacent thereto and by means of a ditch known as the Spring Ditch or Wet Ditch constructed by them, diverted all of the waters from certain seeps and issuing from certain springs along the course of said ditch then known as the Price and Butler Springs, and conveyed the water arising from such seeps and springs through the ditch onto their own land and there applied the same for irrigation, domestic, culinary, and stock watering purposes during each and every year for more than thirty years prior to the commencement of the action; that such diversion and use of said water has been open, notorious, exclusive, under claim of right, and has been continuous from season to season during each and every year for more than thirty years up to and including the year 1928; that the water so collected and diverted includes all of the water now claimed by the plaintiff in his amended complaint and from what is known as the Wylie Springs and Thomas Springs; that ever since the construction of said ditch and the collection of the water from said seeps and springs the ditch has been continuously main-

tained and all of the water issuing from said seeps and springs has been diverted by and into said ditch and by said ditch conveyed to defendants' lands and there used by the defendants and their predecessors for irrigation, culinary, domestic, and stock watering purposes during each and every year; that the amount of water collected, diverted, and used by the defendants amounts to approximately one to three second feet depending upon the season of the year and the rainfall and snowfall of the various seasons.

There are other allegations in the answer and counterclaim, but in the view we take of the case the foregoing are sufficient for the purposes of this opinion.

The issues were found in favor of the defendants and findings of fact were made by the court substantially in harmony with the foregoing and other allegations of the defendants in their answer and counterclaim.

At the trial plaintiff took the position, and offered a great deal of testimony tending to prove, that originally there was no water of any appreciable quantity in the springs, seeps, and percolations now claimed by him. He contends that the springs and seeps are the result of the irrigation of lands situate to the south and west of his property and at a higher elevation during and after the year 1914 when the Strawberry Canal was constructed and used, and that there was not water in the springs and the seeps until the year 1916. In this respect the plaintiff has changed from the theory upon which his action was commenced, otherwise, in drafting his pleadings he would not have alleged that the springs and seeps flowing substantially two cubic feet of water per second had been in existence and used by him for more than fifteen years.

The following facts are very clearly established by the evidence: Plaintiff's land is situate along the southwest side of the valley through which Spanish Fork river flows and extends onto and over a bluff fifty feet or more in height extending along and forming the southwest boundary line of the river valley. The water in question in this case issues

from the ground in several places spoken of as spring areas near the foot of or a few feet up on the sides of the bluff. The predecessors in interest of the defendants some time prior to the year 1868 constructed a ditch originally known as the Spring or Wet Ditch from the Spanish Fork river across plaintiff's lands near the foot of the bluff and thence in a northwesterly direction to their lands where they used the waters of Spanish Fork river and such water as came into the ditch from springs or seeps for the various purposes as claimed by the defendants. The springs and seeps from which the water involved in this action issues are situate in or above this ditch so that if not interfered with, the ditch diverts and carries the waters to the defendants' lands. The record is fairly clear that neither the plaintiff nor his predecessors interfered with or objected to the defendants using the water until some time after the year 1920.

Plaintiff's land was patented in the year 1874 or 1875, and entered upon not earlier than the year 1871.

It has long been settled doctrine in this state that while it is the duty of this court to determine the weight of the evidence in equity cases, still, unless it appears from a clear preponderance of the evidence that the findings of the trial court are wrong, it is our duty to follow them.

The plaintiff's theory of this case is that at the time the ditch was constructed there was no water in the springs and seeps and that of necessity there could have been no appropriation of the water by the defendants until after the springs developed. Plaintiff also insists that the areas where the water now comes to the surface were mere seeps or wet spots and that the water did not come into existence so as to be the subject of appropriation until 1916, many years after the lands had been segregated from the public domain, and that being mere seeps and percolations situate on plaintiff's land, the defendants could not initiate any right to its use after entry.

There is a great deal of evidence tending to establish that the water issued from the earth when the ditch was constructed in substantially the same quantity and manner as at present and that from the time of the construction of the ditch prior to the year 1868 down to the year ■ 1920 and thereafter, the water was used by the defendants as claimed by them. There is also a large amount of evidence in the record tending to establish that there was no water of any appreciable quantity in these springs or seeps until the year 1916; but we are unable to say that the court's findings in favor of the defendant to the effect that the water was there and appropriated by the defendants at the time of the construction of the ditch and continuously thereafter are erroneous.

The following is a portion of the testimony given in the trial of the case tending to support the findings of the court:

Elmer A. Jacobs, an experienced irrigation engineer, measured the flow of the springs in December, 1928, and in May, 1929, and found the amount of water entering the Spring or Wet Ditch, sometimes referred to in the testimony as the outside ditch, to be something over a second foot upon each occasion. He described the appearance of the spring and spring areas and expressed the opinion that they were permanent sources of supply having their initial source some distance away.

James F. Beck testified that he assisted in constructing the ditch prior to the Black Hawk War in 1865; that there were a few small springs along the ditch, some of them in the bottom and some on the side, and in fact "plant grass growed in it"; and that he couldn't judge that there was much if any difference in the spring now than there was years ago.

Sarah Olive Curtis testified that she remembered living in that vicinity in 1861; that the ditch was there before the Black Hawk War; that she had seen the water lately in the ditch; and that there doesn't seem to be any difference in the water flowing from the spring now than then.

Lars Nielson testified that he was watermaster from 1895 to 1900. In answer to the following question, "Did you notice the water coming out in several places the other morning—different places?" his reply was: "It is about like it always was, you see you had to jump around there and take care you didn't get into a hole and get wet. It seemed like it was kind of a boggy place always, as far as I could remember. Next to the hill, between the hill and the ditch like." That he had seen cows there wallowing around up to their knees; that the conditions are practically as they were years ago as far as water is concerned.

Jesse S. Butler, one of the defendants, testified that he had lived near the springs all of his life; that he remembered the springs and percolating waters in question for fifty to fity-four years; that the springs have been practically in the same condition all of that time, and that the defendants and their predecessors during all of that time have kept the ditch in repair and used the water exclusively for irrigation, domestic, culinary, and stock watering purposes, and no one else has ever made claim to it until 1920 when James W. Thomas, predecessor in interest of the plaintiff, made application to appropriate the same in the state engineer's office; that no one except the defendants have ever attempted to use the water until just before this action was filed.

There is much more evidence in the record tending to establish that the water in question has emerged from the ground in substantially the same quantity as at present since a time prior to the construction of the ditch as least as early as 1868; that from that time and continuously thereafter until just before the commencement of this action the water had been used by the defendants and their predecessors openly under claim of right and continuously without interference or objection thereto by the plaintiff, his predecessors, or any other person.

For discussion of the legal principles involved in this action we refer the reader to the case of *Holman* v. *Christensen*, 73 Utah 389, 274 P. 457, and cases there cited.

The judgment is affirmed, with costs to the respondents.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, J., being disqualified, did not participate herein.