## GRECO v. GRAKO et al.

No. 5245. Decided December 28, 1934. (39 P. [2d] 318.)

*O. K. Clay,* of Salt Lake City, for appellant.

*Henry Ruggeri,* of Price, for respondent.

ELIAS HANSEN, Justice.

This is an appeal from a decree vacating and annulling a deed dated May 3, 1924, whereby plaintiff is purported to have conveyed to the defendant Joe Grako fifteen parcels of land located in Price, Carbon county, Utah. In his complaint, plaintiff alleges that the deed was secured by fraud practised upon him by the defendant Joe Grako; that Joe Grako conveyed without consideration the tracts of land described

in the complaint to defendant Mary Spatafore, who knew, or in the exercise of reasonable care should have known, that Joe Grako was not the owner of the land and was without authority to convey the same.

The defendants demurred generally to the complaint and filed an answer thereto. The demurrer was overruled. In their answer defendants denied that any fraud was practised upon plaintiff in securing the deed. As a further defense defendants alleged that, during the time the record title of the land described in the complaint stood in plaintiff's name, he sold one of the lots for $485, mortgaged some of the property for $862, collected the rents and profits from all of the lands, and retained all of the moneys for his own use and benefit. Upon the issues thus joined a trial was had to the court sitting without a jury. In its written findings of fact the court found that the deed mentioned in the complaint from plaintiff to defendant Joe Grako was secured by fraud, and that the deed from Joe Grako to defendant Mary Spatafore was given without consideration. The court concluded that both deeds were void, and accordingly entered a decree declaring that they be vacated and annulled. This appeal is prosecuted by defendant Joe Grako. The other defendant, Mary Spatafore, does not appeal.

The point is made by appellant that the demurrer to the complaint should have been sustained because it is not alleged that plaintiff sustained any damage by reason of the fraud complained of. The point is not well taken. In this suit plaintiff seeks to have a deed set aside because of alleged fraud. In such case it is not necessary to allege or prove money damages. By one of his assignments of error appellant attacks that finding whereby the court below found that appellant secured the execution of the deed in question by fraud practised upon the respondent. Appellant is entitled to prevail upon that assignment because plaintiff has failed to establish by a clear preponderance of the evidence his claim that the deed in question was se-

cured by fraud. This is a suit in equity, and appeal is taken on questions of fact as well as on questions of law. In such case it becomes our duty to review and weigh the evidence and determine whether or not the evidence supports the findings attached. A statement of the evidence somewhat in detail thus becomes necessary. The evidence without conflict establishes the following facts: Plaintiff is an uncle of appellant, who hereafter will be referred to as the defendant. Both plaintiff and defendant are Italians. Plaintiff came to this country from Italy about thirty years ago. He is unable to read or write either the Italian or English language except to sign his name. Prior to May 2, 1924, he had on deposit in a bank in Italy 23,600 lire. He also owned an undivided interest in some real estate in Italy. The defendant owned the fifteen parcels of land involved in this litigation. On each of two of the tracts of land was a house. The houses were rented for $50 per month. The other tracts of land were vacant. Plaintiff and defendant were friendly towards each other. The defendant had been engaged in the real estate and other businesses. Defendant and his wife had been divorced. By the decree of divorce defendant was required to pay to his former wife for her support and the support of the minor children $4,000, payable in installments of $65 per month. Defendant had frequently been in arrears in the payment of the alimony, and his former wife had on a number of occasions cited him into court to show cause why he should not pay the alimony. On one occasion defendant was prosecuted criminally and convicted of failure to support his minor children. He paid up the alimony and was not sent to prison. Defendant was preparing to go to Italy. Prior to the execution of the deed in question, defendant had advanced for the use and benefit of the plaintiff the sum of $600. On May 2, 1924, plaintiff and defendant went to an attorney's office in Price, Utah, and defendant conveyed to plaintiff by warranty deed, subject to a mortgage in the sum of $1,500, the fifteen parcels of land described in the complaint. Defendant also trans-

ferred to plaintiff his interest in a contract with a building and loan company. The contract with the building and loan company was for $2,500, but before it matured in that amount future installments in the sum of $263 must be paid. Under date of May 3, 1924, plaintiff signed and acknowledged before a notary public a warranty deed purporting to convey to the defendant all of the parcels of land which had been conveyed to the plaintiff by the defendant under date of May 2, 1924. It is the deed of May 3, 1924, that is involved in this controversy. Under date of May 3, 1924, plaintiff also executed a will in which defendant was named as the sole beneficiary excepting for the sum of $1 bequeathed to each of six other relatives of plaintiff. Under date of August 1, 1924, plaintiff executed an instrument appointing, as his attorney, the defendant. The power of attorney is written in the Italian language. The document has not been translated, but it was stipulated by counsel for the parties at the trial that it was a general power of attorney. Soon after the deed and will were executed, the defendant left Price. He went to Rock Springs, Wyo., and, after remaining there for three or four months, he went to Italy, where he remained for a period of twenty months. In 1925 defendant, by virtue of the power of attorney given to him by plaintiff, drew the money from the bank in Italy. The value of the money so drawn measured in money of the United States was $1,040. Defendant did nothing to secure title or possession of the real estate of plaintiff located in Italy. Defendant returned to Carbon county, Utah, in May, 1926. In August or September, 1926, the sum of $2,500 was secured on the building and loan contract which defendant had theretofore transferred to plaintiff. The money was applied to the payment of the $1,500 mortgage which was on the Price property and the remainder in the sum of $886.50 was paid to the former wife of the defendant to satisfy a judgment lien for alimony against the real property at Price. When defendant left Carbon county in 1924 plaintiff took possession of and collected the

rents and paid the taxes on the real estate involved in this litigation. For a period of about three years after defendant returned from Italy plaintiff continued to collect the rents and pay the taxes on the property at Price. During the time plaintiff was in control of the property at Price he sold one city lot for $485. On April 17, 1928, plaintiff borrowed $862 from one Sam Angotti and gave as security a mortgage for that amount on a part of the property at Price. In July, 1929, defendant paid off the mortgage held by Angotti. At the time of payment the principal, interest, and costs incurred in the foreclosure proceeding amounted to $1,034.95. In the spring of 1929, defendant made arrangements to sell for the sum of $425 one of the lots which was conveyed by the deed here in question. Defendant requested plaintiff to convey the lot to the prospective purchaser, but plaintiff refused. Thereupon defendant recorded the deed which plaintiff is seeking to have set aside in this proceeding. Soon after the deed was so recorded, defendant conveyed without consideration all of the land conveyed by the deed in question to Mary Spatafore, the other defendant in this proceeding.

The evidence is in conflict in the following particulars: Plaintiff testified in effect that some time prior to the execution and delivery of the deed to the property at Price and the transfer of the building and loan contract to him he and the defendant entered into an oral contract for the exchange of the property. The defendant agreed to convey the property at Price and transfer the building and loan contract to him, and that for such property plaintiff agreed to convey his interest in the property in Italy and transfer the money in the bank in Italy to the defendant. That it was also agreed that each should make out a will bequeathing and devising the property of each to the other. That, so far as he knew, the defendant had not made out a will. That he had not asked the defendant to make out a will because he relied on the promise made by the defendant when the oral agreement was made. That when he signed the deed conveying

the Price property back to the defendant he thought, and the defendant informed him, that it was necessary for him to sign the papers so that he (defendant) could get the property in Italy. That he did not know he had signed a deed reconveying the property to the defendant until he learned through his friends that such a deed had been placed on record. That he executed two powers of attorney, one for the money in the bank in Italy and the other so that the defendant could get title to the real estate in Italy. That the powers of attorney were executed before F. Anselmo of Salt Lake City, Italian counsel for Utah. Plaintiff further testified: That at the time the documents for the exchange of the property were signed the property at Price was worth the following amounts: The two lots with the houses on them were worth $1,000 each; five of the other lots were worth $200 each; and each of the other eight lots was worth $100. That by one of the powers of attorney, he conveyed to the defendant a one-sixth interest in 120 acres of land in Italy. That his interest in that land was worth 50,000 lire.

Defendant denied he agreed to exchange his property in Price and the building and loan contract for the money on deposit in the bank in Italy and plaintiff's interest in the land in Italy. He also denied that he agreed to will his property to the plaintiff. He testified that the agreement between him and the plaintiff was to the following effect: That the property at Price was conveyed and the building and loan contract transferred to plaintiff so that plaintiff could care for and control it during his (defendant's) absence from Utah. That plaintiff reconveyed the Price property and executed the will in defendant's favor so that he could take the property back when he returned from Italy. That he conveyed the Price property to Mary Spatafore in trust to be held by her because he intended to again go back to Italy. That when he asked plaintiff to make a deed out to the lot which he had sold, plaintiff made no claim to be the owner of the property, but refused to convey it until he (defendant) paid plaintiff for service and money ex-

pended in caring for the property. Defendant further testified: That he was acquainted with land values in Italy and with the land in which plaintiff had an interest. That the entire tract of land in Italy was about 8 acres, about 5 acres of which was under cultivation. That plaintiff's interest in the land in Italy in 1924 was worth between 13,000 and 15,000 lire or about $600 in American money. That, when he was about to go to Italy in 1924, he told plaintiff that he needed the $600 which plaintiff owed him; that, if plaintiff would transfer the money which he had in Italy, he would cancel the $600 obligation and settle the remainder when he returned from Italy. That plaintiff agreed to keep an account of the moneys which he received and paid out on the Price property. That the two lots in Price with houses built thereon were worth $5,000.

John S. Astornino was called as a witness by defendant. He testified: That he left Italy in November, 1923. That he was familiar with land values in Italy when he left there and was familiar with the land in which plaintiff had an interest. That the entire tract of land consisted of about 14 or 15 acres. That 8 acres were cultivated to vineyards and that a part of the land was in orchard. That the orchard land was worth about 500 lire an acre and the remainder of the property was worth 15 or 20 lire an acre. That the entire property was worth about 100,000 lire.

Nephi Gunderson was called as a witness by the defendant. He testified: That he was city marshal of Price. That he had a conversation with plaintiff in the spring of 1929 in which he asked plaintiff to sign a petition for putting in a curb and gutter fronting on some of the property involved in this litigation. That plaintiff said he could not sign the petition because the property belonged to Joe Grako. That three of the lots involved in this litigation were worth $600 each, four, $500 each, and three others, $400 each.

F. Anselmo was called as a witness and testified that he executed only one power of attorney for the plaintiff. Sam Succuro was called as a witness by defendant and testified:

That in the spring of 1929 he attempted to settle the differences existing between plaintiff and defendant. That at that time plaintiff said that the only thing he wanted from the defendant was the money which he got in Italy and he would give the property in Price back to the defendant if the defendant would repay him the money which he received out of the bank in Italy. Upon being recalled in rebuttal, plaintiff denied that he told Mr. Gunderson that defendant owned the property in question, but that he did tell Mr. Gunderson to see Joe Grako about the curb and gutter because he (the plaintiff) could not read or write and therefore would not sign anything. Some evidence was received touching the amount collected by the plaintiff from the rental of the property at Price and the amount expended for the repair and taxes upon that property. Such evidence bears but remotely, if at all, upon the issues raised by the pleadings, and therefore need not be recited.

Before plaintiff is entitled to have the deed in question set aside, the burden of proving the alleged fraud by clear and convincing evidence was upon him. *Lane* v. *Peterson*, 68 Utah 585, 251 P. 374; *Ferrell* v. *Wiswell*, 45 Utah 202, 143 P. 582. Plaintiff has failed to discharge that burden. Plaintiff's case rests almost entirely on his own testimony. His testimony in a number of important particulars is in conflict with the testimony of disinterested witnesses. Plaintiff testified that he executed two powers of attorney, one to enable defendant to draw the money out of the bank in Italy, and one for his interest in the land in Italy, and that both were executed by F. Anselmo, an Italian consul. Mr. Anselmo testified that but one power of attorney was executed. Mr. Gunderson testified that in the spring of 1929 plaintiff told him that some of the land mentioned in the deed in question belonged to the defendant. Plaintiff denied having made that statement. Mr. Succuro testified that he had a conversation with the plaintiff and defendant in an attempt to get them to settle their disputes about the property, that in that conversation

plaintiff made no claim that he was the owner of the property in Price, but that he refused to release his claim to the property until such time as defendant would repay the money which he had drawn from the bank in Italy. Plaintiff did not deny having had that conversation. The conveyance whereby plaintiff secured title to the Price property was a warranty deed subject only to a $1,500 mortgage. The assignment of the building and loan contract to the plaintiff was apparently absolute in its terms, and yet plaintiff consented without objection so far as the record discloses to the application of $886.50 of that money to the payment of a judgment against the defendant in favor of his former wife. Plaintiff testified the land in Italy in which he owned a one-sixth interest consisted of about 120 acres. Mr. Astornino placed its area at about 14 or 15 acres. The defendant estimated it at about 8 acres. Both Astornino and defendant testified that they were very familiar with the land in Italy. They placed plaintiff's interest in the property in Italy at a value of $600. A comparison of the value of the property which plaintiff claims was exchanged would indicate that defendant in all probability would not agree to such an exchange. While plaintiff was permitted to testify to the value of the property in Price and also as to the value of the property in Italy, it was not shown that he was familiar with real estate values either in Price or in Italy. At the time of the trial he had been in the United States continuously for a period of twenty-five years. If he had any means of knowing the value of the property in Italy at the time of the transaction here involved, it is not shown by the evidence. According to plaintiff's testimony, the property at Price was, at the time of the transaction, worth approximately $3,800. The value of the building and loan contract was about $2,200. There was a mortgage of $1,500 on the Price property. Plaintiff owed defendant $600. Thus, according to plaintiff's version of the agreement, he received property of the value of approximately $5,100 for which he gave defendant $1,040 in money de-

posited in the bank in Italy and his interest in the land in Italy of the value of about $2,000, or a total of $3,040.

The witnesses who were called by the defendant qualified to testify as to real estate values, and, so far as appears, they were disinterested. If they and the defendant are to be believed, the value of the Price property was in excess of $10,000 and the value of plaintiff's interest in the real estate in Italy was $600. Thus, according to the values placed upon the properties exchanged, plaintiff received $10,000, the value of the Price property, $2,200, the value of the building and loan contract, $600 which the plaintiff owed the defendant, less the $1,500 mortgage on the Price property, making a total net value of the properties received by plaintiff of $11,300. Thus it will be noted that if defendant and his witnesses are to be believed as to the values of the properties, the plaintiff profited by the exchange nearly $10,000. The fact that one of the vacant lots at Price sold for $485 and defendant had an agreement to sell another vacant lot for $425 tends to corroborate the testimony of defendant and his witnesses as to the value of the property at Price. A consideration of the evidence touching the value of the property involved in such a transaction as plaintiff contends was entered into between him and the defendant renders plaintiff's version of the agreement very improbable.

The fact that defendant permitted plaintiff to remain in control of the property in Price and collect the rents derived therefrom for a period of about three years after the defendant returned from Italy tends in a measure to support plaintiff's claim. However, from a reading of the record which is brought here for review it is clear that the defendant was determined, if possible, to prevent his former wife from collecting the alimony which was awarded her by the decree of divorce. The testimony of the plaintiff is to that effect. There is considerable other evidence tending to show that such was the fixed purpose of defendant. If defendant permitted the property to remain in his name,

he could not hope to escape payment of the alimony. By placing the record title to the property first in the name of the plaintiff and later in the name of Mary Spatafore, he hoped to place it out of the reach of his former wife. The actions of both plaintiff and defendant strongly indicate that such was the purpose of the defendant and that plaintiff for a time, at least, was willing to aid in accomplishing that end.

In reaching the conclusion as we do that plaintiff has failed to establish his right to have the deed in question set aside, we are not unmindful of the rule frequently announced by this court to the effect that it will not disturb the trial court's findings unless it is reasonably clear that such findings are against the evidence. Such rule is in part founded upon the fact that the trial court has the opportunity to see the witnesses and to observe their demeanor while testifying and therefore is in a better position to determine the weight which should be given to the evidence than are the members of this court who do not have that opportunity. The rule, however, does not relieve this court from the responsibility placed upon it by the Constitution and laws of this state of weighing the evidence and determining the facts. In equity cases, the parties are entitled to the judgment of this court as to the facts. The view seems to have been entertained by the trial court and counsel that the pleadings are broad enough to require an accounting by one or both of the parties to this litigation. We entertain some doubts as to the soundness of such view, but in light of the fact that such question is not raised, we express no opinion with respect thereto. Upon this record the defendant is entitled to prevail with respect to the deed which plaintiff seeks to set aside. In that respect the judgment appealed from should be, and accordingly is, reversed, and the court below is directed to recast its findings, conclusions, and judgment in accordance with the views herein expressed. The evidence before us touching the various claims which the parties assert against each other is not

such as to warrant us in making a final determination thereof. Doubtless the unsatisfactory condition of the evidence in such respect is due to the fact that the principal, if not the sole, issue involved was the validity or invalidity of the questioned deed and the evidence touching the claims of the parties against each other was merely incidental to the main issue. Should either or both of the parties hereto desire to amend his or their pleadings with respect to an accounting, he or they should be permitted to do so and be further heard on the matter of an accounting; otherwise the court below is directed to enter judgment as heretofore indicated in this opinion. Appellant is awarded his costs.

STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

WOLFE, District Judge (concurring).

I concur. In so concurring I am not unmindful of the rule to the effect that, while a written record in an equity case may apparently show the preponderance of evidence in favor of a conclusion different from that reached by the trial judge, still the benefit of the doubt should be given to his conclusions where the imponderables, not revealed by the record, such as the manner and demeanor of the witnesses (very important indexes to credibility), might weigh in the scale sufficiently to reverse that apparent preponderance of the record. Where, however, the preponderance shown by the record is so great in favor of a conclusion different from that arrived at by the trial judge that the unrecorded parts of the trial could not reasonably be expected to change such apparent preponderance, or where, as in this case, some fact independent of any element which might affect the credibility of witnesses speaks eloquently of a wrong conclusion by the trial judge, the rule does not apply.

The independent fact I refer to is the great disparity in the values of the real estate exchanged and the comparative equality of the personal property exchanged. Both exchanges raise a belief, independently of any appraisement of the

credibility of any witness in the case, that the defendant was telling the truth when he said the exchange of personal property was to settle accounts between him and the plaintiff, and the transfer of his real estate—the extra property—was to place it beyond the reach of a wife insistent on the payment of back alimony.

MOFFAT, J., being disqualified, did not participate herein.