## STANLEY v. STANLEY.

No. 6110. Decided October 14, 1939. (94 P. 2d 465.)

*DeVine, Howell & Stine* and *Neil R. Olmstead,* all of Ogden, for appellant.

*Thatcher & Young* and *Valentine Gideon,* all of Ogden, for respondent.

EVANS, District Judge.

This is an action to quiet title to certain premises in Ogden, Utah, and designated as 823 and 825 Twenty-Fifth Street. Willis O. Stanley died on November 17, 1937, leaving as his survivors the defendant, his widow, and George C. Stanley and Lucile Stanley, children by adoption. Willis O. Stanley will be hereafter referred to as the testator. He and the defendant had been married some fifty years prior to his death and had lived together until 1932, at which time they separated. The testator had for many years been employed as a travelling salesman on a salary of $250 per month, one-half of which he regularly remitted to the defendant, which, together with rentals received from properties acquired during the marriage, she deposited in the bank as a joint account. Of the various properties acquired, all were taken in the name of the defendant, except the property here in question, which stood on the records in the name of the testator. All living expenses and all expenses incident to the upkeep of these properties were paid from this joint account by checks drawn by the defendant, who assumed the general management of the properties because of the testator's frequent absences from home. Sometime after 1929 the defendant closed this joint account and opened an account in her own name which was, however, handled in the same way as had been the joint account.

In the year 1906, the testator executed a deed conveying the premises in question to the defendant. This deed was recorded three months after the death of the testator. The plaintiff, while admitting the execution of the deed, contends that it was never delivered. The defendant, on the other hand, contends and offered evidence to support her contention that the deed was delivered. The trial court found the issues in favor of the plaintiff upon what appears to be conflicting evidence.

The scope of the review on appeal in equity cases ■
is clearly settled in this jurisdiction.

"This court is authorized by the state Constitution to review the findings of the trial courts in equity cases, but the findings of the trial courts on conflicting evidence will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of the evidence." *Olivero* v. *Eleganti*, 61 Utah 475, 214 P. 313, 315.

To the same effect are *Klopenstine* v. *Hays*, 20 Utah 45, 57 P. 712; *Singleton* v. *Kelly*, 61 Utah 277, 212 P. 63, 66; *Holman* v. *Christensen*, 73 Utah 389, 274 P. 457; *Zuniga* v. *Evans*, 87 Utah 198, 48 P. 2d 513, 101 A. L. R. 532; *Wilcox* v. *Cloward*, 88 Utah 503, 56 P. 2d 1; *Hoyt* v. *Upper Marion Ditch Co.*, 94 Utah 134, 76 P. 2d 234.

Let it be here observed that it is not contended that there is not a substantial conflict in the evidence. The defendant, however, assigns as error the ruling of the court in excluding the defendant's testimony of the delivery of the deed to her by the testator shortly after its execution, and upon the same principle that the court erred in not permitting her to identify the signature of the testator to a document which, it is claimed, would tend to support her claim of ownership. It is further contended by the defendant that the court should have excluded statements made by the testator to third persons to the effect that he owned the property. Had the court adopted the defendant's theory and admitted the evidence offered by the defendant and had excluded evience offered by the plaintiff over defendant's objection, that would not, however, dispose of the conflict, but it is insisted that except for the errors complained of the evidence would have so preponderated in favor of the defendant as to lead to a different conclusion.

The testimony upon which the plaintiff relies and which it is contended is inconsistent with the defendant's claim that the deed was delivered to her, may be briefly summarized, as follows:

The testator left the management of the various properties acquired by them before their separation, including 823 and 825 Twenty-Fifth Street, to the defendant. Shortly after their separation the testator consulted counsel about obtaining payment of the rents on these houses directly to him. In February, 1934, he notified the defendant that he would thereafter care for his property shortly after which he rented one house, and in May, 1935, moved into the other, occupying a part and renting a part. He exercised exclusive ownership of this property until his death in November, 1937. In 1935 he mortgaged the property without objection from the defendant, or the assertion of any claim of ownership, although she refused to join in the mortgage. The testator left a will devising his real property to the plaintiff personally. He neither claimed or owned any other real estate. The defendant had access to the desk in which he kept his papers at all times since the execution of the deed under which she claims, and after the death of testator his personal effects were removed to the home of defendant. In 1934, the testator left with one Forrest all the keys to the property and defendant demanded of him that he deliver the keys to her, which demand was refused on the ground that she was not the owner. She at that time asserted no claim of ownership. Immediately after the death of the testator the defendant filed a petition for the probate of a will dated in 1892, in which the defendant was the sole beneficiary. She alleged in a verified petition that the testator owned the property in question at the time of his death. The defendant had always attended to the incidents of acquiring, renting and preserving her own property and was therefore familiar with the matters entering into the transfer of titles. When told that some wall paper had been sent to the testator's place on 25th Street, the defendant said: "If it had gone up to my place you would have gotten that money." Pending the proceedings for probate of the 1892 will, a later will was discovered by George C. Stanley, dated in 1934, in which the plaintiff was made the sole beneficiary.

The defendant was advised of the discovery and the will was filed with the Clerk of the Court on November 27, 1937. On December 8, 1937, the defendant received notice of the hearing on the petition for probate of the later will. The deed was filed for record by the defendant on February 15, 1938. Shortly before that, according to the testimony of her daughter Emily, the defendant brought out a box and looking over the papers she found that deed. In 1913, the testator procured insurance in his own name on the property in question, which he renewed from time to time until shortly before his death. The defendant insured her properties with the same agency. Due to the testator's frequent absences the policies and statements for premiums were usually mailed to the defendant, who promptly paid the premiums upon the several properties standing in her name. The testator invariably paid the premium on the property here in question, except the last premium on the policy issued shortly before the testator's death, and for which a claim has been filed against the estate.

With respect to the delivery of the deed, the trial court excluded evidence offered by the defendant as to the formal act of delivery as being incompetent under the provisions of Section 104-49-2, R. S. U. 1933. However, she was permitted to testify that she first saw the deed on May 19, 1906, in the testator's hands and next saw it in her own hands after which she immediately placed it in a tin box; that when she first saw the deed the testator was removing it from his pocket, remarking that he had a present for her, and handed it to her, and that she paid him a dollar, requesting however, that the deed be not recorded until after his death, and that thereafter it remained in her possession.

This testimony would undoubtedly justify an inference that the deed was delivered and should be considered prima facie sufficient for that purpose. The inference is not conclusive, nor would the presumption arising from the possession of the deed by the defendant be conclusive.

Was the behavior of the testator and of the defendant subsequent to their separation inconsistent with the claim that the deed was delivered with intent to presently pass title? It is apparent that the testator thereafter exercised all of the indicia of ownership by entering into the exclusive possession of the premises, taking insurance in his own name, redeeming the property from a tax sale, mortgaging the property with the knowledge of the defendant, disposing of the property by will, collecting rents, paying taxes and assuming all expenses of upkeep, all without any protest or objection or claim by or on behalf of the defendant. In the course of these various transactions he had repeatedly stated and represented that he was the owner of the property, such statements, however, being admissible only upon the question of intent to presently pass title, if in fact there had been a manual delivery.

"Since delivery is essentially a matter of intent, which intent is to be arrived at from all the facts and surrounding circumstances, we believe the better rule is to include in those facts and circumstances declarations of the grantor both before and after the date of the deed, at least where it appears that the declarations are made fairly and in the ordinary course of life." *Mower* v. *Mower*, 64 Utah 260, 228 P. 911, 914.

Then also these declarations were reinforced by the sworn declaration of the defendant in her petition for probate of a will to the effect that the testator was the owner of this property at the time of his death.

In this respect a very natural question presents itself. If, as the defendant claims, she had in her possession the deed at the time of testator's death, why not then record the deed instead of offering the will for probate, and thus avoid subjecting the property to the claims of creditors, not to mention the difference in the expense of the two respective procedures? Then a later will is found which is filed for probate in which the plaintiff is named as beneficiary and of which proceedings the defendant had notice. Some three months elapsed before the deed was placed of record. Had

the defendant been mentally infirm, or inexperienced in matters of business, or indifferent to her own interests, or had she forgotten about the deed, such might afford some explanation of these inconsistencies. The record, however, discloses no satisfactory explanation of the defendant's extraordinary behavior, and the facts tend quite convincingly to support the plaintiff's theory that the deed was discovered among the testator's papers after the later will had been filed for probate.

As we view the evidence in this case the findings of the trial court are amply supported by the evidence, and this would be true even though the defendant had been permitted to testify as to the manual delivery of the deed, and quite as effectually disposes of all presumptions in the defendant's favor which would cast the burden of proving non-delivery upon the plaintiff.

There being no reversible error, the judgment is affirmed, with costs to the respondent.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur in the results. It would perhaps be well if we fastened upon an accurate and consistent expression of the judicial policy of this court in the review of equity cases. The Constitution of Utah, Art. VIII, Sec. 9, not only gives us authority but makes it our duty to review the facts. This has been construed to mean that we review and weigh the evidence as it appears in the record. *Lund* v. *Howell,* 92 Utah 232, 67 P. 2d 215 (followed in Id., 92 Utah 250, 67 P. 2d 223) ; *Christenson* v. *Nielsen,* 88 Utah 336, 54 P. 2d 430, 432 (where this court held that in an equity case the appellate court was "compelled to review the record and pass on the weight and sufficiency of the evidence") ; *Buzianis* v. *Buzianis,* 81 Utah 1, 16 P. 2d 413 (where the court held that where there was a conflict in the evidence it was the court's duty "to pass upon the relative weight thereof").

The cases are replete with expressions as to the tests to be applied to determine when we will reverse or affirm in an equity case. They vary considerably. Hereunder are cited cases from this jurisdiction with various expressions used. *Skola* v. *Merrill,* 91 Utah 253, 64 P. 2d 185 (where this court reversed the trial court because the "fair preponderance" of the evidence was the other way) ; *Chapman* v. *Troy Laundry Co.,* 87 Utah 15, 47 P. 2d 1054, 1056 (where it was held that the Supreme Court has the burden of determining "whether the findings of fact are supported by a fair preponderance of the evidence") ; *Transfer Realty Co.* v. *Lichfield,* 84 Utah 163, 33 P. 2d 179, 181, rehearing denied, 85 Utah 451, 39 P. 2d 752 (where it was held that this court "may examine the evidence to determine whether or not the trial court's findings are supported by a preponderance of the evidence") ; *Lake Shore Duck Club* v. *Lake View Duck Club,* 50 Utah 76, 166 P. 309, 310, L. R. A. 1918B, 620 (where it was held that the Supreme Court has the power "to review the testimony for the purpose of determining what the facts are * * * even though its views are in conflict with the findings of the trial court") ; *Forbes* v. *Butler,* 66 Utah 373, 242 P. 950, 951 (holding it incumbent on the court "to review the evidence and decide the case according to the facts as we find them to be, bearing in mind legal presumptions in favor of the judgment") ; and *Garfield Banking Co.* v. *Argyle,* 64 Utah 572, 232 P. 541, 542 (holding that the Supreme Court in weighing evidence should take into consideration the fact that the "trial court was not bound to give the same weight or effect to all the statements made by the several witnesses").

In *Zuniga* v. *Evans,* 87 Utah 198, 48 P. 2d 513, 520, 101 A. L. R. 532, a well considered case, it was stated :

"After a careful reading of the entire testimony of this witness, and weighing the same along with the admitted facts in the case, we do not feel satisfied that the finding ought to be disturbed. The trial judge did not accept the testimony of this witness in full. The trial judge had a better opportunity from seeing and hearing the witness

than we have from merely reading the transcript to appraise his credibility and to determine what weight should be given to his testimony. The opinion of the trial judge is therefore entitled to some weight with us."

Other cases containing similar expressions are as follows: *Williams* v. *Peterson*, 86 Utah 526, 46 P. 2d 674; *Silver King Consol. Mining Co.* v. *Sutton*, 85 Utah 297, 39 P. 2d 682; *Corey* v. *Roberts*, 82 Utah 445, 25 P. 2d 940; *Consolidated Wagon & Machine Co.* v. *Kay*, 81 Utah 595, 21 P. 2d 836; *Holman* v. *Christensen*, 73 Utah 389, 274 P. 457; *Warner* v. *Tyng Warehouse Co.*, 71 Utah 303, 265 P. 748; *Ephraim Willow Creek Irr. Co.* v. *Olson*, 70 Utah 95, 258 P. 216; *Schulder* v. *Dickson*, 66 Utah 418, 243 P. 377; *Jenkins* v. *Nicolas*, 63 Utah 329, 226 P. 177; *McKellar Real Estate & Investment Co.* v. *Paxton*, 62 Utah 97, 218 P. 128; *Lawley* v. *Hickenlooper*, 61 Utah 298, 212 P. 526; *Bracken* v. *Chadburn*, 55 Utah 430, 185 P. 1021; *Kinsman* v. *Utah Gas & Coke Co.*, 53 Utah 10, 177 P. 418; *Campbell* v. *Gowans*, 35 Utah 268, 100 P. 397, 23 L. R. A., N. S., 414, 19 Ann. Cas. 660 (followed in *Utah Com. & Savings Bank* v. *Fox*, 44 Utah 323, 140 P. 660; and *Little* v. *Stringfellow*, 46 Utah 576, 151 P. 347): *Fares* v. *Urban*, 46 Utah 609, 151 P. 57; *Froyd* v. *Barnhurst*, 83 Utah 271, 28 P. 2d 135; *Paxton* v. *Paxton*, 80 Utah 540, 15 P. 2d 1051; *Thomas* v. *Butler*, 77 Utah 402, 296 P. 597; *Clark* v. *Clark*, 74 Utah 290, 279 P. 502; *Olivero* v. *Eleganti*, 61 Utah 475, 214 P. 313 (and cases cited); *Singleton* v. *Kelly*, 61 Utah 277, 212 P. 63 (and cases cited); *Rieske* v. *Hoover*, 53 Utah 87, 177 P. 228.

The expressions range all the way from that which says a review in equity in this court is a trial de novo on the record, to that taken from *Olivero* v. *Eleganti*, supra, contained in the main opinion.

I opine that what was really meant was that on review we would go over the record to determine what our conclusions of fact were from the transcript of the evidence, and if at the end of that investigation we were in doubt or even if there might be a slight preponderance in our minds

against the trial court's conclusions, we would affirm. This is because we would be confined to the dry written record and would not have the benefit of seeing and hearing the witnesses. In some cases that would be quite valuable while in others, where the evidence was purely or almost altogether documentary, it might be practically valueless. Such a distinction was noted in the concurring opinion in *Greco* v. *Grako,* 85 Utah 241, 39 P. 2d 318, 322, where it was said:

"I am not unmindful of the rule to the effect that, while a written record in an equity case may apparently show the preponderance of evidence in favor of a conclusion different from that reached by the trial judge, still the benefit of the doubt should be given to his conclusions where the imponderables, not revealed by the record, such as the manner and demeanor of the witnesses (very important indexes to credibility), might weigh in the scale sufficiently to reverse that apparent preponderance of the record. Where, however, the preponderance shown by the record is so great in favor of a conclusion different from that arrived at by the trial judge that the unrecorded parts of the trial could not reasonably be expected to change such apparent preponderance, or where, as in this case, some fact independent of any element which might affect the credibility of witnesses speaks eloquently of a wrong conclusion by the trial judge, the rule does not apply."

The reason then that we have the expressions that in order to reverse there must be shown a "clear preponderance" or "fair preponderance" of the evidence the other way or that we must "bear in mind legal presumptions in favor of the judgment" etc., is because of this recognition that the lower court had the witnesses before it and was better able to judge of their credibility. This is borne out by the following expressions:

In *Corey* v. *Roberts,* 82 Utah 445, 25 P. 2d 940, 942, the court held:

"In equity cases the appeal (Const. Utah, art. 8, § 9) may be on questions of both law and fact. Such is the appeal in this case. On such review the duty of this court requires an examination of all questions of law and all facts revealed by the record, and, after making such examination and due allowance for the better opportunity afforded the trial court to observe the demeanor of witnesses,

and more advantageous position of determining their credibility and the weight to be given to the testimony submitted, this court, analogous to a trial de novo on the record, will determine from a fair preponderance or greater weight of the evidence whether or not the findings of the trial court are supported thereby. *Lawley* v. *Hickenlooper*, 61 Utah 298, 212 P. 526."

In *Kinsman* v. *Utah Gas & Coke Co.*, supra, the court stated [53 Utah 10, 177 P. 420]:

"While this court will, and it is its duty in equitable proceedings to, review the testimony and determine its weight, of necessity much consideration must and will be given to the trial court's findings, not only because such court heard the witnesses and had an opportunity to observe their demeanor upon the witness stand, their means of knowledge, their interests, etc., but particularly in this case greater consideration should be given to the court's finding by reason of the court's opportunity in visiting the plant and vicinity, and seeing from personal investigation and observation the conditions that exist there."

I think hardly accurate the expression in *Chapman* v. *Troy Laundry Co.*, supra, that the Supreme Court has the burden of determining "whether the findings of fact are supported by a fair preponderance of the evidence." Our duty is to make an independent examination of the record. If after that we find (1) the preponderance of the evidence supports the trial court's findings of fact, or (2) if there is doubt in our minds as to where the preponderance lies, or (3) we think the evidence as revealed by the record may slightly preponderate against its conclusions but such preponderance may well be offset in favor of his conclusions by having seen the witnesses and been able to judge by their demeanor as to their credibility, then we will not reverse. The expressions that there must be a "clear" or "fair" preponderance of the evidence against the findings of the trial judge, seek to allow for his advantaged position in having seen the behavior of the witnesses on the stand.

In short, as held in *Wilcox* v. *Cloward*, 88 Utah 503, 56 P. 2d 1, if after we review the record we cannot say that the court came to a wrong conclusion, we should affirm.

We do not reverse if we find the court's findings supported by a fair preponderance of the evidence, or if supported only by a slight preponderance, or if the evidence is evenly balanced, or even if there is in the record a slight preponderance the other way, for the reasons above set out.

Being convinced that evidence of delivery of the deed from Willis O. Stanley to Emily C. Stanley should not be received because Emily C. Stanley was incompetent under Sec. 104-49-2, R. S. U. 1933, I shall treat the case as if there was no evidence of delivery. This makes it unnecessary for me to determine whether declarations of a decedent tending to show ownership in him after a manual handing of a deed from himself to another when the deed ran to that other are admissible in evidence to find the intent with which the deed was so handed, especially where not made contemporaneously with the manual act. I am not prepared, without further research, to subscribe to the doctrine of *Mower* v. *Mower*, 64 Utah 260, 228 P. 911, although it may be the law of this state.

It may be contended that even though there is no direct evidence of manual handing over from Willis to Emily Stanley, the inference from her testimony that she saw the deed in his hand and next saw it in her hand raises the inference of delivery. While I have grave doubts whether the rule of Sec. 104-49-2, R. S. U. 1933, may be circumvented by admitting every fact surrounding the fact which is to be concluded from them, when such facts themselves were "equally within the knowledge," no cross assignment of error was made as to their admission hence they must stand as correctly admitted for this review. But I do not think the inference that a manual handing over took place need be indulged. Certainly when the facts from which we are asked to infer were wrongly admitted and we are asked to draw an inference which will reverse the trial court in its findings, we will do so only when it is the necessary and only inference. I do not see that it is such in this case. For that reason I found

my concurrence on the assumption that it does not appear in this case that there was any delivery of the deed.

PRATT, J., being disqualified, did not participate herein.