## MERRILL v. BAILEY & SONS CO. et al.

No. 6219.   Decided October 22, 1940.   (106 P. 2d 255.)

324

*Hurd & Hurd, Moyle, Richards & McKay, Bagley, Judd, Ray & Nebeker,* and *Emerson C. Willey,* all of Salt Lake City, for appellants.

*J. D. Skeen* and *E. J. Skeen, both* of Salt Lake City, for respondent.

McDONOUGH, Justice.

Respondent commenced an action in the district court against appellants to quiet title to certain property located in Salt Lake City. In reply to appellants' answer setting up that they had certain rights and easements in and to the premises, respondent admitted the existence of certain easements but alleged that appellants were wrongfully claiming additional rights and had subjected the servient estate to greater burdens than those to which it would be subject under the easements admitted to exist.

From a judgment in favor of respondent limiting appellants' use of the premises and requiring a certain ramp to be removed, this appeal is taken. The grounds upon which reversal of the judgment is asked, as revealed by the assignments of error, are: (1) that respondent's reply set

out a new and different cause of action than that set out in his complaint and therefore the court should have directed a verdict for appellants on the pleadings; (2) that certain testimony and exhibits received in evidence were inadmissible and therefore the court erred in admitting them; and finally (3) that the evidence is insufficient to support the findings and conclusions of the trial court and the judgment entered thereon.

All the property involved in this litigation—including both the property owned by respondent in which appellants claim certain easements and the property owned by appellants to which said easements are appurtenant—was at one time owned by Bert N. Bailey and Seymour N. Bailey as tenants in common and comprised the South ½ of Lot 3 and all or nearly all of Lot 2, Block 43, Plat "A," Salt Lake City Survey.

In 1923 Seymour N. Bailey and wife conveyed to Bert N. Bailey the former's undivided one-half interest in the South ½ of Lot 3—the property now owned by respondent—reserving, however, certain easements and rights of way in said premises, "to be used in connection and for the convenience of Lot 2," the dominant estate now largely owned by appellants.

On the same day Seymour N. Bailey and Bert N. Bailey together with their wives, conveyed to Bailey & Sons Company, one of the appellants herein, certain portions of Lot 2, being part of the dominant estate, setting forth the easements and rights of way conveyed with the premises.

The reservations in the first deed were as follows:

"Reserving, however, to the grantors the perpetual right to the maintenance and use of the platform now located on the Southern portion of said premises about 10 feet wide including the overlapping roof for said platform including also the curve thereof along the railway spur as at present constructed, with full right to repair, reconstruct or rebuild the same within its present location.

"Also reserving the perpetual right to the use of the trackage over and along the South line of said premises and to the team, truck or

auto drive along the said track all to be used in connection and for the convenience of Lot 2, of said Block for the loading and unloading of merchandise."

And the express grants of certain easements and rights of way in the second deed were:

"Also a perpetual right to the use of the railroad spur together with team, truck and auto drive along the north line thereof and the platform for loading and unloading from vehicles and cars through and over a part of said Lot 3 of said block and plat as at present constituted with a right to repair, reconstruct or rebuild the same as shall from time to time become necessary within its present location."

The conflict between the parties to this litigation arises with respect to (1) the size of the platform and (2) the location of the "team, truck or auto drive"—both of which are referred to in the reservation and grant above quoted —and the rights of appellants with respect thereto. This phase of the case will be discussed hereinafter.

The first question to be determined is whether the trial court committed reversible error in refusing to direct a verdict for appellants on the pleadings on the ground that respondent's reply set up a separate and distinct cause of action to that set out in the complaint. We are of the opinion that it did not. The reply does not set up a different cause of action from the complaint nor does it seek different relief—it merely limits the scope of the relief to which respondent alleged in his complaint that he was entitled by admitting the existence of certain rights in appellants while at the same time seeking to quiet title with respect to other alleged rights which respondent asserts do not exist. The complaint alleges that respondent is the owner in fee of certain premises; that appellants claim a right to use a portion of said premises "for roadways and particularly for the purpose of loading and unloading merchandise from and upon railroad cars and trucks which pass over and upon the plaintiff's said real estate;" that certain of appellants wrongfully constructed or caused to be constructed

on respondent's property a concrete ramp and assert and claim a right to use the same; that appellants further claim "a right of way easement over and upon the said real estate of plaintiff;" that unless restrained and required to remove said concrete ramp "defendants will continue to trespass upon the real estate of plaintiff and * * * will continue to wrongfully maintain and use" said ramp. Then follows a general prayer for relief quieting title in respondent and a special prayer for a decree requiring the removal of the concrete ramp and restraining appellants from trespassing upon respondent's property.

In their several answers appellants denied several allegations of the complaint and set out affirmatively that they were entitled to certain easements and rights of way by virtue of certain deeds from the predecessors in interest of both appellants and respondent.

Respondent's reply admits the execution of the deeds as alleged in the several answers and the existence of certain track and loading platform privileges in favor of appellants, but denies the other allegations. It then alleges that appellants have wrongfully increased their loading platform privileges by the construction of the concrete ramp "covering a much larger area than the said lumber platform, and wrongfully and unlawfully enlarged the servitude upon the plaintiff's property."

There thus appears no conflict between the complaint and the reply. The complaint sets out certain alleged wrongful claims and uses by appellants with respect to respondent's property. Appellants' defense is that they have certain rights to the premises by virtue of certain deeds. And the reply while admitting the existence of those deeds and also certain trackage and loading platform rights nevertheless asserts that the alleged wrongful claims and uses are not included within such rights. While plaintiff's method of pleading by first alleging a fee-simple title in his complaint and claiming less in his reply may not constitute a model, it is

clear that defendants' motion for judgment on the pleadings was properly denied.

Appellants objected to the introduction of certain maps, identified as plaintiff's exhibits L, M, N, O, P, Q, and R. These maps, it is contended, were not properly identified or authenticated and while appellants admit the "maps and drawings in some instances may be admitted for illustrative purposes," nevertheless they contend that in ■ this case the trial court "treated and considered the same as independent and substantive evidence in the case, and predicated some of his chief Findings and portions of his Decree squarely upon the maps and drawings, and the dimensions and figures therein shown."

We cannot agree with appellants' contention that the court treated the exhibits as substantive evidence. With respect to exhibits L, M, and N, at the time they were offered in evidence the following colloquy took place:

"The Court: As far as his answer is concerned, it would only serve the same purpose as if he would make the drawings himself, but his drawings obtained from some other source, they would have no probative value, unless further identified.

"Mr. Hurd: Your Honor is admitting them, I take it then, as this witness' testimony, and not as independent evidence at all.

"The Court: Yes; that is all."

And the same is true with respect to exhibits P, Q, and R. Witnesses were asked whether in their opinion the maps were a "fair representation" of the premises. The witnesses testified in detail as to various portions of said maps involved in the controversy and stated that the maps presented the picture just as the witnesses remembered it.

As to exhibit "O" a slightly different problem arises. This exhibit is a portion of the files contained in the office of the Public Service Commission of Utah pertaining to a spur track located across the road from the premises here

involved, which track the Commission authorized the Oregon Short Line Railroad Company to build in 1921. The exhibit contains a map of the property in the vicinity of the proposed spur track, including the premises here involved. It was argued by respondent that this exhibit was admissible as a public document showing the property involved in this action. While the court admitted the exhibit in evidence, it did not pass on the question whether it was admissable as a public document. Nor do we need to pass on this question since, as will be seen hereinafter, even though it be assumed that the exhibit was inadmissible for any purpose, the error committed by the trial court in admitting it was not prejudicial to appellants, since the testimony and exhibits other than Exhibit "O" sufficiently support the court's findings as to the size and location of the loading platform.

The other maps were merely illustrative of what the several witnesses testified to—including the dimensions of the various structures shown thereon. The witnesses could certainly have drawn maps in the courtroom illustrating their testimony — which maps would have been admissible in evidence. Hence, they could (at least over the objections here interposed, and for the purpose clearly indicated by the court) illustrate their testimony by maps already drawn and testify in detail as to each one indicating what the witnesses thought was the size, shape, and location of the structures on the premises.

Nor do we think it error to permit counsel to cross-examine appellants' witnesses by using these maps and requesting appellants' witnesses with respect to the structures thereon to state whether in the opinion of each witness the particular map was a fair representation of each structure situated on the premises involved in this lawsuit.

The final question is whether the evidence is sufficient to support the findings, conclusions, and decree of the trial

court. This being an equity case we must review the record to determine whether the evidence clearly preponderates against the findings of the trial court. But the findings should not be disturbed unless the clear weight of the evidence is against them. *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465 and cases there cited.

We are concerned particularly with the lower court's determination as to the scope of appellants' easements and rights of way in and to respondent's property created by the grant and reservation hereinabove quoted.

First, as to the "loading platform privileges:" The court determined that appellants were "entitled to use, maintain, repair, rebuild or reconstruct" a loading platform upon the following described portion of plaintiff's land: "Beginning at a point 7.3 feet East of the Southwest corner of Lot 3, Block 43, Plat 'A', Salt Lake City Survey; thence North 10.7 feet; thence East 34 feet; thence North 14.6 feet; thence South approximately 70 degrees East 61.2 feet following the curve of the Oregon Short Line tracks and on the South side thereof; thence South 5.0 feet to the South side of said Lot 3; thence West 91.7 feet to point of beginning. Also steps to said platform extending 7 feet West and 5 feet North from the Southwest corner of said platform," together with an overlapping roof over most of said platform. And in connection therewith the court determined the respondent was entitled to have the concrete ramp removed from such portions of his property which it now covered as was not included within the area in which appellants are entitled to maintain a loading platform.

The trial court's findings and conclusions in this respect are supported by substantial evidence. Neither party was obliged to prove his affirmative allegations beyond a reasonable doubt but only by a preponderance of the evidence. And while maps which were introduced into evidence for illustrative purposes should not be considered by the court as substantive evidence of the information contained thereon they might be referred to by the court

in connection with the testimony of the witnesses which they purported to illustrate; and such evidence together with the other competent evidence introduced could be used in reaching a conclusion as to the dimensions of the platform in question. There was a map properly authenticated introduced in evidence showing the location of buildings and of the railroad track; and illustrative photographs as well as illustrative maps introduced in evidence would aid in the determination of the dimensions of the platform which were found by the court.

The deed reserving the loading platform privilege describes the same as being "about 10 feet wide" and includes also "the overlapping roof of said platform including also the curve thereof along the railway spur." This loading platform extends east and west on the north side of certain buildings owned by several of the appellants and projects out to the north following the roalroad spur which comes from the north and makes a curve to the east along said platform. Toward the west end of the platform the railroad spur curves to the north and is some distance away from the building. The dispute arises as to how far the original platform (before the erection of the concrete ramp) followed the curve of the spur track to the north and west. Appellants' witnesses testified that the platform followed the curve of the track to within 10 feet of the west end of the platform at which point it was about 36 feet north of the building where it made a little jog south away from the track and then came straight west to the western-most boundary of said platform at which point it was about 32 feet north of the building. In other words, the platform, instead of being about 10 feet wide, was, at its west end, about 32 feet wide north and south. There it made a jog to the east about 10 feet and then again north about 4 feet to the spur track and then followed the track along its curve to the south and east so that at the east end of the platform it was about 10 feet wide.

Respondent's witnesses, however, testified that the platform extended only a short distance along the curve of the track and that the portion which followed along such curve ended about 34 feet east of the west end of the platform at which point the projection was about 25 feet north of the building or about 15 feet north of the other portion of the platform which was about 10 feet wide. The testimony of Arnold Evans and Willard Snow is to the effect that in 1926 they worked for the Springfield Tire Company which occupied the building along the north side of which the platform in question is located; that the company erected a ramp from the west doorway on the north of said building directly north across the 10-foot platform and out to the spur track; that the east side of said ramp ran alongside of and hooked onto the west side of the projection of the platform which also ran out to the spur track. We are of the opinion that the finding of the trial court as to the platform dimensions should not, in accordance with the rule of *Stanley* v. *Stanley*, supra, and the tests suggested therein by Mr. Justice Wolfe in his concurring opinion be disturbed.

Since the concrete ramp covers a greater portion of respondent's property than the original platform, it is an additional burden on the servient estate—notwithstanding appellants' argument to the contrary. It not only increases the length of the platform along the railroad spur for purposes of loading and unloading from railroad cars but it renders the entire portion of the property it covers practically useless for any purpose except that connected with the buildings to which it leads—which buildings are owned by certain of the appellants. And thus respondent is entirely cut off from any use of that portion of his property. It, therefore, follows that the court's decree requiring the removal of the concrete ramp except from that portion of respondent's property formerly covered by the wooden platform is correct.

Next, as to the "team, truck or auto drive" privilege; the lower court determined that appellants were entitled

to right of way only over that portion of respondent's property which is located south of the spur track, notwithstanding the fact that the "grant" in the one deed of the right of way was as follows:

"also a perpetual right to the use of the railroad spur together with team, truck and auto drive along the north line thereof.  *  *  *"

Further, the evidence shows conclusively that the only "team, truck or auto drive" on respondent's property is located on the north side of the spur track. While the reservation contained in the deed from Seymour N. Bailey and wife to Bert N. Bailey hereinabove quoted did not specify on which side of the spur track the "team, truck and auto drive" was located, it is nevertheless apparent that said drive could not follow along the south side of the spur track to the property located in the east part of Lot 2 now owned by Bailey & Sons Company, since the platform projects out to the track from the building on the south side of said track. It is significant, also, that the two deeds, one containing a reservation and the other a grant, which were executed at or about the same time use similar words in describing "the drive" along the track. The words in the reservation are "to the team, truck or auto drive along said tracks;" those in the grant are to the "team, truck or auto drive along said track;" those in the grant are to the "team, truck or auto drive along the north line thereof." It seems clear from the wording that the same drive was referred to in each instrument and that the grantor in each deed had in mind only one drive along the spur, since he described it as "the drive;" and that such drive, the one along the north line of the spur—so designated in the grant—was the one the grantor in each case had in mind. There is no conflict in the evidence as to the existence of such a drive along the north line of the spur.

We are of the opinion that the evidence clearly preponderates in favor of appellants' contention that their easements

include the use of such driveway. The extent and nature of the right to its use is somewhat defined by the terms of the first deed in which the right to the use of the drive is reserved:

"* * * all to be used in connection and for the convenience of Lot 2, of said Block for the loading and unloading of merchandise."

"Also a perpetual right to the use of the railroad spur together with team, truck and auto drive along the north line thereof and the platform for loading and unloading from vehicles and cars through and over a part of said Lot 3 of said block and plat as at present constituted with a right to repair, reconstruct or rebuild the same as shall from time to time become necessary within its present location."

This use is not exclusive in appellants but as with the other rights and easements must be used so as to permit its use by respondent also.

To the extent above mentioned the trial court erred in its findings, conclusions, and decree.

Still another point raised by appellants is that the lower court erred in making its findings and conclusions without first affording appellants an opportunity to be heard upon their objections and proposed amendments to the proposed findings and conclusions. There is no merit to this contention. The duty of making findings and conclusions is that of the trial court. In doing so it has become customary to have the prevailing party submit proposed findings and conclusions, and by rule of court the adverse party may submit objections and proposed amendments thereto—all of which was done in this case. While the rule goes on to say that the court may set a time for hearing the objections and proposed amendments, it certainly does not make it compulsory for the court to do so. The court may make its findings and conclusions independent of either the proposed findings and conclusions or the objections and amendments offered thereto. It it certainly

not error, therefore, to fail to give the parties an opportunity to be heard on the matter.

The cause is remanded to the lower court, with instructions to modify its findings, conclusions, and decree in accordance with the views of this opinion. If necessary, additional evidence may be adduced as to the length and width of said "team, truck or auto drive" which appellants are entitled to use. The parties are to bear their own costs.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.